HATO REY ELECTROPLATING, INC., demandante y recurrente, *v.* PERTANIO RODRÍGUEZ ET AL., demandados y recurridos.

*Número:* O-82-753      *Resuelto:* 28 de abril de 1983

*Patrick Duffy O'Neill,* de *Colorado, Martínez, Odell, Calabria & Sierra,* abogado de la peticionaria; *Arnaldo Villamil,* abogado de los recurridos.

E<small>L</small> J<small>UEZ</small> A<small>SOCIADO</small> S<small>EÑOR</small> R<small>EBOLLO</small> L<small>ÓPEZ</small> emitió la opinión del Tribunal.

El demandado recurrido le arrendó un negocio de su propiedad a la demandante recurrente. Ésta le entregó al primero la suma de $20,000 para responderle, en la eventualidad de daños, por uso indebido de la propiedad que recibía en arrendamiento. En relación con dicha suma de dinero, y como evidencia de la entrega de la misma, el arrendador (demandado recurrido) suscribió ante notario público un pagaré a favor de la arrendataria (demandante recurrente). Al efectuarse dicho contrato de arrendamiento se hizo un inventario de toda la propiedad que se recibía en arrendamiento, comprometiéndose la arrendataria, al finalizar el contrato, a devolver la misma en el mismo estado de conservación que la recibió, salvo desgaste por uso normal.

Finalizado el arrendamiento y habiendo entrado el arrendador en posesión del negocio, éste pretendió entregarle personalmente una carta(¹) a la arrendataria donde se detallaba la propiedad que, según el arrendador, faltaba, la cual valorizó en la suma de $11,657.26. Simultáneamente pretendió entregarle un *cheque de gerente*, pagadero a favor de la arrendataria, por el balance hasta los $20,000, o sea, por la suma de $8,342.74.(²) La arrendataria se negó a recibir la carta y el cheque. Al otro día, 15 de julio de 1982, el arrendador le envió a la arrendataria la referida carta y el cheque por correo certificado con acuse de recibo, recibiéndolos la arrendataria, según certificación al efecto de la Oficina de Correos de los Estados Unidos, el día *19 de julio de 1982*.

---

(¹)La carta, en lo pertinente, expresa que:

"Después de haber hecho un inventario del material y equipo dejado en la Empresa y lo que aparece, adjunto le envío una lista con la diferencia.

"Si en los próximos diez (10) días a partir de la fecha de esta carta se repone este material, muy gustosamente se le devolverá la diferencia."

(²)En ningún sitio de dicho cheque aparece consignado que el cheque es un "pago total" o "pago final", o palabras a esos efectos, de lo adeudado.

La arrendataria, mediante demanda de fecha *31 de agosto de 1982*, en la cual hace una sucinta relación de los hechos antes reseñados, reclama del arrendador el pago de la suma de $20,000, evidenciada dicha "deuda" por el pagaré antes mencionado. Simultáneamente presenta ante el tribunal de instancia una Moción Depositando Fondos, referente la misma al cheque oficial por la suma de $8,342.74, en la cual expresa y solicita que "desea depositar dicha suma en la Secretaría de este Hon. Tribunal y que la misma sea retenida en dicha Secretaría hasta que concluya el pleito, para garantizar la Sentencia que pueda recaer en favor de la parte demandante".

Recurrió ante este Tribunal la arrendataria demandante en revisión de una orden que emitió, referente a la Moción Depositando Fondos, el honorable Tribunal Superior de Puerto Rico, Sala de San Juan, la cual en lo pertinente expresa que:

> No ha lugar. La Secretaria no está autorizada al embargo de fondos en su cuenta. El cheque de referencia lo es a la orden del demandante y aquí promovente por lo tanto no puede reputarse como bienes del demandado. Véase además norma del caso de *A. Martínez* v. *Long Const.*, 101 D.P.R. 830. Devuélvase cheque al demandante.

Emitimos orden para mostrar causa dirigida a la parte demandada recurrida. Ha comparecido; estando en condiciones de resolver el recurso, procedemos a así hacerlo. Como podemos notar, la transcrita orden aduce *tres* fundamentos, a saber:

1— Que la Secretaria del tribunal de instancia no está autorizada al embargo de fondos en su cuenta;

2— Que el cheque que se pretende depositar no puede reputarse como propiedad del arrendador demandado, por cuanto el mismo es a la orden de la arrendataria demandante; y

3— Que la norma establecida en el caso de *A. Martínez & Co.* v. *Long Const.*, 101 D.P.R. 830 (1973) —refe-

rente la misma a la doctrina sobre el "contrato de acuerdo y pago" y/o "aceptación como finiquito" (*accord and satisfaction*)— es de aplicación al caso de epígrafe.

## I

Por razón de que de ser aplicable a los hechos del presente caso la doctrina sobre "aceptación como finiquito" (*accord and satisfaction*) ello le pondría fin al presente litigio, resulta necesario el que primeramente resolvamos si ello efectivamente es así.

En *López* v. *South P.R. Sugar Co.*, 62 D.P.R. 238, 243 (1943), expresamente resolvimos que dicha doctrina, "conocida en la Ley Común desde tiempo inmemorial", rige en nuestro Derecho. Expresamos, a las págs. 244 y 245, que:

Para que exista *accord and satisfaction* precisa el concurso de los siguientes elementos: (1) Una reclamación ilíquida o sobre la cual exista controversia *bona fide*; (2) un ofrecimiento de pago por el deudor; y (3) una aceptación del ofrecimiento de pago por el acreedor. *Cruze* v. *Life Insurance Company of Virginia* [184 So. 735 (1938)], y autoridades citadas; *Berger* v. *Quintero* [127 So. 356 (1930)]. Siendo requisito *sine qua non* para que la doctrina de *accord and satisfaction* sea aplicable, que la reclamación sea ilíquida o que sobre la misma exista controversia *bona fide*, parece obvio que cuando el acreedor en las circunstancias indicadas recibe del deudor y hace suya una cantidad menor que la que él reclama, el acreedor está por ello impedido de reclamar la diferencia entre lo recibido y lo por él reclamado. *El acreedor*, al hacérsele el ofrecimiento de pago sujeto a la condición de que al aceptarlo se entenderá en saldo de su reclamación, *tiene el deber de devolver al deudor la cantidad ofrecida*, si no está conforme con dicha condición. Pero él no puede aprovecharse de la oferta de pago que de buena fe le hace el deudor, para después de recibirla, reclamar el balance. De no haber aceptado la oferta de pago, el acreedor hubiera tenido que litigar en los tribunales su reclamación, con el riesgo de no poder probar quizá todo lo que el deudor estuvo dispuesto a pagar. Además, privaría con su conducta al deudor, en caso de litigio, del

derecho que tendría de acogerse a lo prescrito en el artículo 313 del Código de Enjuiciamiento Civil.[3] (Énfasis suplido.)

En el caso citado por el tribunal de instancia en la orden emitida, *A. Martínez & Co.*, supra —caso en que un contratista de una obra, ante el reclamo del subcontratista por trabajo extra realizado que no estaba comprendido en las especificaciones del contrato original, emite un cheque certificado por una cantidad menor que la reclamada por el subcontratista, con un concepto de endoso al dorso a los efectos de que constituía pago total, endoso que fue tachado y sustituido por el subcontratista, al cambiar y depositar el cheque, por otro que hacía constar que se aceptaba únicamente como pago parcial— modificamos el primer requisito exigido en el caso de *López*, supra, al exigir no sólo la iliquidez de la deuda sino la "ausencia de opresión o indebida ventaja de parte del deudor" sobre su acreedor. Pág. 834. En adición, expresamos en el citado caso, a la pág. 835, que:

> Es obvio que el acreedor que acepta dinero con claro entendimiento de que representa una propuesta para la extinción de la obligación, no puede desvirtuar el acuerdo de pago fraseando a su gusto el recibo o el endoso en el cheque. El contrato de acuerdo y pago (*accord and satisfaction*), al igual que su paralelo de mayor solemnidad la transacción, es accesorio, consensual, bilateral y oneroso. Scaevola, *Código Civil*, ed. 1953, tomo 28, págs. 272 y ss. *Se perfecciona con la simple retención del cheque por el acreedor que con ello expresa su consentimiento*, sin que el acto unilateral de éste tendiente a modificarlo, una vez aceptado el cheque, produzca consecuencias jurídicas. No incidió la sala de instancia al conceder la sentencia sumaria solicitada por la parte recurrida. (Énfasis suplido.)

---

[3] En *Pagán Fortis* v. *Garriga*, 88 D.P.R. 279 (1963), nos negamos a aplicar la norma por razón de que entendimos que no estaba presente el primero de los requisitos señalados en *López* v. *South P.R. Sugar Co.*, 62 D.P.R. 238 (1943): el de la iliquidez de la deuda.

■ Un examen de los hechos del presente caso nos convence de que se cumple con los primeros dos requisitos que exige nuestra jurisprudencia para que opere la doctrina de "aceptación como finiquito". En cuanto al primero de ellos —iliquidez de la deuda y ausencia de opresión del deudor— tenemos que al momento de firmarse el contrato se estipuló que la arrendataria, aquí demandante recurrente, le entregaría la suma de $20,000 al arrendador, aquí demandado recurrido, para responder de los posibles daños que se causara al negocio. No se acordó, sin embargo, cómo y quién haría el inventario de los daños, cómo y quién determinaría el valor de los mismos, etc. El arrendador ahora alega —lo cual niega la arrendataria— que se causaron unos daños y valoriza los mismos en una determinada suma de dinero. Somos del criterio de que existe una "reclamación ilíquida o sobre la cual existe controversia bona fide". En cuanto al segundo requisito, entendemos que —no empece el hecho de que de acuerdo con la doctrina y la jurisprudencia[4] dicho ofrecimiento de pago tiene que ir acompañado por declaraciones o actos que claramente indiquen que el pago ofrecido por el deudor al acreedor es en pago total, completo y definitivo de la deuda existente entre ambos y de que, como surge de los escolios número uno y dos, *ante*, ello no se consignó en el cheque, como tampoco se hizo claro en la carta que se envió— se cumple con dicho segundo requisito *por cuanto la propia acreedora, aquí demandante recurrente, así lo entendió*. Ello surge del párrafo sexto de la Moción Depositando Fondos que ésta presentó, en donde expresa que "la parte demandante se niega a aceptar dicho cheque como pago total de la obligación".

■ En cuanto al tercer requisito —la aceptación por parte del acreedor— la situación es distinta. El tribunal de

---

[4] 1 Am.Jur.2d *Accord and Satisfaction*, Sec. 14 (1962); *Gulfport Wholesale Lumber Co.* v. *Boeckeler Lumber Co.*, 287 S.W. 799 (1926); *Work* v. *Associated Almond Growers*, 282 P. 965 (1929); *Dudley* v. *Adams*, 298 S.W.2d 701 (1957); *Pidcock* v. *Williams*, 259 S.W. 899 (1924); *Clay* v. *Rossi*, 108 P.2d 506 (1940).

instancia aparentemente al interpretar de una forma aislada nuestra expresión en el caso de *A. Martínez & Co.*, supra, a los efectos de que "Se perfecciona [el contrato de acuerdo y pago] con la *simple retención del cheque por el acreedor que con ello expresa su consentimiento*" y ante el hecho de que la demandante recurrente había retenido el cheque, antes de recurrir al tribunal, por unas semanas, entendió erróneamente que la demandante recurrente (la acreedora) había "aceptado" la oferta hecha por el deudor.

La citada expresión, sin embargo, debe ser ubicada en el contexto dentro del cual se expresó. Recordemos que en el caso de *A. Martínez & Co.*, supra, el acreedor no sólo retuvo el cheque recibido, *sino que lo endosó y lo cambió*; en otras palabras, en adición a la mera retención hubo unos actos afirmativos, posteriores al recibo del cheque, que claramente indicaban la "aceptación de la oferta" por parte del allí acreedor. [5] Allí se configuró y tuvo lugar una retención que surtió efecto de pago al convertir el acreedor el cheque en su propio y permanente provecho. El mismo efecto tendría una retención inexplicada por tiempo inusitado.

En el presente caso, por el contrario, la situación es totalmente distinta. Recordemos, en primer lugar, que cuando el deudor originalmente pretende hacerle entrega de la carta y el cheque a la acreedora, ésta no sólo no acepta la oferta, sino que inclusive rehúsa recibir la carta y el cheque. Al serle éstos enviados por correo, acude al tribunal en claro rechazo de la oferta. Es cierto que entre el momento que recibe, por mediación del correo, la carta y el cheque y el momento en que acude al tribunal transcurren unas semanas. Dicho término, sin embargo, no fue irrazonable. [6]

Somos del criterio que cuando una persona o ente corporativo se encuentra en una situación de esta naturaleza lo

---

[5] 1 Am.Jur.2d *Accord and Satisfaction*, Sec. 23 (1962).

[6] 1 Am.Jur.2d, *supra*, Sec. 23; *American Nat. Bank* v. *Bradford*, 188 S.W.2d 971 (1945); contrástese *Curran* v. *Bray Wood Heel Co.*, 68 A.2d 712 (1949).

lógico y razonable es que investigue y consulte sobre cuál es el camino a seguir, lo que necesariamente conlleva el transcurso de algún tiempo, la razonabilidad del cual, por necesidad, tendrá que ser determinado según las circunstancias particulares de cada caso. [7]

Resolvemos, en consecuencia, que en ausencia de actos por parte del acreedor claramente indicativos de la aceptación de la oferta que se le ha hecho, la mera retención por su parte del pago ofrecido, durante un período razonable no implica que éste haya aceptado la oferta y, por lo tanto, no entra en vigor la doctrina de aceptación como finiquito. [8]

## II

El tribunal de instancia resolvió que el cheque de gerente aquí en controversia por ser "a la orden del demandante y aquí promovente" no podrá "reputarse como bienes del demandado". Incidió al así resolver.

Como expresamos en *Herrera* v. *First National City Bank*, 103 D.P.R. 724 (1975), el cheque de gerente, distinto al cheque normal y corriente, "es uno en que el propio banco que lo expide es librador y librado", en relación con el cual, el banco al expedirlo "garantiza que los fondos representados por el cheque han sido reservados para beneficio del tomador", y cuyos "atributos especiales . . . son los que han determinado que [circule] en el tráfico bancario como si [fuera] dinero en efectivo". Pág. 728. Desde el punto de vista de la titularidad, la doctrina señala [9] que el titular del cheque de gerente es quien lo compra hasta tanto lo

---

[7] *Curran*, supra, pág. 718.

[8] *Wheeler & Motter Mercantile Co.* v. *Kitchen*, 169 P. 877 (1917); *Hoeppner Construction Co.* v. *United States*, 273 F.2d 835 (1960).

[9] "The *purchaser* of a cashier's check remains the 'owner' thereof until such time as he *delivers or negotiates* it to the *payee* and until such delivery, the purchaser retains the right to cancel." (Énfasis suplido.) 5B *Michie on Banks and Banking*, Cap. 9, Sec. 251 (Supl. 1982).

entregue o lo negocie. ([10]) El Art. 383 de Código de Comercio de Puerto Rico —19 L.P.R.A. sec. 61— establece que:

> Un documento *se negocia* cuando se *traspasa* por una persona a otra *de modo tal* que constituya al cesionario en tenedor del mismo. Si es pagadero al portador, queda negociado por la entrega; *si a la orden, queda negociado por el endoso del tenedor completado con la entrega.* (Énfasis suplido.)

■ En el caso que nos ocupa el "deudor", aquí demandado recurrido, compra un cheque de gerente *a la orden* de su "acreedor", aquí demandante recurrente, el cual instrumento es "traspasado" de uno a otro al ser enviado por correo. Se trata, en consecuencia, de un instrumento "a la orden" que, según la Ley de Instrumentos Negociables, se "negocia" *mediante el endoso del "tenedor" completado con la entrega.*

■ Bajo los hechos específicos del presente caso el "tenedor" lo es la acreedora, aquí demandante recurrente, ([11]) y ésta nunca "endosó" el cheque. ([12]) *Procede, sin embargo,*

---

([10]) Distinto al caso del cheque ordinario y corriente, donde "ha de entenderse que *el librador sigue siendo dueño de la provisión,* incluso después de emitido el cheque: no pasa la propiedad o el derecho de crédito al tenedor, sino que continúa perteneciendo al librador, hasta que el cheque es pagado. Si el crédito pasase al portador, éste ostentaría acción directa contra el librado, y no la ostenta". (Énfasis suplido.) A. Majada, *Cheques y talones de cuenta corriente, en sus aspectos bancario, mercantil y penal,* 4ta ed., Barcelona, Ed. Bosch, 1977, pág. 125.

([11]) El Art. 543 del Código de Comercio —19 L.P.R.A. sec. 381— define "tenedor" como el "tomador o endosatario de una letra o pagaré que estuviere en posesión de éste, o el portador del mismo". Tratándose en el caso presente de un instrumento en la "primera entrega" es aplicable el concepto de "tomador" y no el de endosatario. Véase: B. Santiago, *Tratado de Instrumentos Negociables,* 2da ed., Puerto Rico, Ed. Universitaria, 1981, pág. 810.

([12]) "Indorsement. *The act of a payee,* drawee . . . or holder of a bill, note, check . . . in writing his name upon the back of the same, with or without further or qualifying words, whereby the property in the same is assigned and transferred to another." (Énfasis suplido.) *Black's Law Dictionary,* 5ta ed., St. Paul, Minnesota, West Publishing Co., 1979, pág. 696.

"When an instrument is payable to order (including one which has previously been specially endorsed) and an indorsement is necessary to transfer title, the indorsement must be in writing and the proper place for it is on the back of the instrument." *Brady on Bank Checks,* 5ta ed., Boston, Warren, Gorham & Lamont, 1979, Sec. 7.3.

246

que nos preguntemos si hubo "entrega". El citado Art. 543 del Código de Comercio de Puerto Rico dispone que dicho término "significa *transferencia* de posesión verdadera o por efecto de la ley, hecha por una persona a otra". A su vez "transferencia" se define en el ámbito comercial como el acto que transmite un "interés" en un instrumento de una persona a otra. [13] En el caso que nos ocupa el "interés" en cuestión es el de "propiedad". Según la doctrina, para que pueda entenderse transmitido *el dominio* es necesario que se configure *la tradición.* [14]

En palabras de Manuel Albaladejo, [15] "En principio, *la tradición* consiste en la entrega de la posesión de la cosa *con ánimo* del que da *(tradens)* y del que recibe *(accipens) de transmitir y adquirir, respectivamente, el derecho* (propiedad, usufructo, u otro que sea) *sobre ella.* Se distinguen, pues, en la tradición, *dos elementos*: uno corporal, la transferencia de la posesión; *otro espiritual, el acuerdo de ambas partes sobre el traspaso del derecho".* (Énfasis suplido.)

En el presente caso, como expresamos en la Parte I de la ponencia, la actitud de la acreedora, aquí demandante recurrente, siempre ha sido de rechazo en cuanto al cheque en controversia, expresada dicha actitud originalmente al rehusar recibir personalmente el mismo, y luego al acudir al tribunal de instancia. Puesto que no ha mediado, por lo tanto, ni endoso ni "entrega" del cheque, la titularidad del mismo continúa dentro de la esfera patrimonial del deudor, aquí demandado recurrido.

### III

La Regla 56.1 de las de Procedimiento Civil de 1979 dispone:

---

[13] *Black's Law Dictionary*, supra, pág. 1342.

[14] Véanse, en general: J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1971, T. III, Vol. I, págs. 339-360; M. Albaladejo, *Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1976, Vol. I, T. III, págs. 144-161.

[15] *Op. cit.*, págs. 144-145.

Regla 56.1. *Principios generales*

En todo pleito antes o después de sentencia, por moción del reclamante, el tribunal podrá dictar cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia. El tribunal podrá conceder el embargo, el embargo de fondos en posesión de un tercero, la prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una orden para hacer o desistir de hacer cualesquiera actos específicos, o podrá ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso. En todo caso en que se solicite un remedio provisional, el tribunal considerará los intereses de todas las partes y dispondrá según requiera la justicia sustancial.

En vista de las disposiciones de la transcrita Regla 56.1 y en vista de que la parte demandada recurrida es el "titular" del cheque de gerente aquí en controversia, somos del criterio de que nada impide que el tribunal de instancia provea de conformidad con lo solicitado por la parte demandante recurrente en su Moción Depositando Fondos.

Por los fundamentos antes expuestos, *se expide el auto y se dictará sentencia mediante la cual se revoque la orden emitida por la Sala de San Juan del honorable Tribunal Superior de Puerto Rico en el caso Civil Núm. 82-5015 con fecha de 8 de septiembre de 1982; y se devuelve el caso al tribunal de instancia para procedimientos ulteriores compatibles con la presente Opinión y Sentencia.*

El Juez Presidente Señor Trías Monge se inhibió y el Juez Asociado Señor Torres Rigual no intervino.