ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VIII

| RICARDO PEDROZA GUZMÁN<br><br>Querellante-Recurrido<br><br>v.<br><br>CBM CAPITOL BUILDING MAINTENANCE, INC.<br><br>Querellada-Peticionaria | KLCE202400155 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.<br>K PE2013-0876<br><br>Sala: 801<br><br>Sobre: Despido Injustificado, Represalia, Cobro Comisiones |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de agosto de 2024.

Comparece la parte peticionaria, CBM Capital Building Maintenance, Inc. (en adelante, CBM), para solicitarnos que se revise y revoque una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, (en adelante, TPI), el 25 de enero de 2024 y notificada el 29 de enero del mismo año, en la cual declaró *No Ha Lugar* la solicitud de paralización de la Ejecución de la Sentencia.[1]

La parte recurrida, Ricardo Pedroza Guzmán, (en adelante, señor Pedroza Guzmán), compareció mediante *Oposición a Certiorari*.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, *expedimos el auto de Certiorari y confirmamos la Orden* emitida por el foro primario por los fundamentos que expondremos a continuación.

---

[1] Apéndice I del Recurso de *Certiorari*, pág. 1.

**-I-**

El señor Pedroza Guzmán comenzó a trabajar para CBM el 1 de octubre de 2008, su eventual despido ocurrió el 29 de diciembre de 2011. Posteriormente, el 20 de febrero de 2013 radicó una *Querella* por despido injustificado, represalia y cobro de comisiones contra CBM al amparo del trámite sumario dispuesto en la Ley Núm. 2–1961, según enmendada.

 Por su parte, el 25 de marzo de 2013, CBM radicó su *Contestación a Querella*. Negó las alegaciones en su contra y argumentó que el señor Pedroza Guzmán fue despedido de manera justificada, sin que mediaran represalias, por incumplimiento con las normas de la empresa y actos de insubordinación. De igual forma, como defensa afirmativa sostuvo que, no procedían las comisiones solicitadas por el recurrido, toda vez que estas no eran líquidas ni exigibles.

Luego de un accidentado trámite procesal que incluyó múltiples recursos de revisión judicial ante este Tribunal,[2] el 11 de octubre de 2023 el Tribunal de Primera Instancia dictó *Sentencia.*[3] En la misma, dictaminó a la parte peticionaria satisfacer la cantidad de $6,274.88, así como una cantidad similar por concepto de doble penalidad que dispone la Ley Núm. 2-1961 y un 25% adicional por concepto de honorarios de abogados. Además, le impuso a CBM intereses por temeridad al 9.25% anual a ser computados desde el 29 de diciembre de 2011.

Posteriormente, el 12 de diciembre de 2023 el foro de origen emitió *Orden* de *Solicitud de Expedición de Orden de Descubrimiento de Prueba para Ejecución de Sentencia.*[4] El 20 de diciembre de 2023, CBM presentó mediante *Moción Urgente Solicitando Paralización de Ejecución de Sentencia por Novación en*

---

[2] KLCE201201547, KLCE201900354, KLAN202000936, KLCE202100151, KLCE202100842.
[3] Apéndice II del Recurso de *Certiorari*, págs. 2-14.
[4] Apéndice VI del Recurso de *Certiorari*, págs. 18-19.

*la Obligación.*[5] Por su parte, el 22 de diciembre de 2023 el señor Pedroza Guzmán presentó *Oposición a Moción Urgente solicitando Paralización de Ejecución de Sentencia por Novación en la obligación.*[6] En resumen, el recurrido expuso que le habían comunicado que CBM se proponía presentar un caso criminal por fraude en su contra, por lo que debía desistir de este proceso.[7] Añadió que, no había aceptado una disminución por concepto de pago y que, en el caso de marras no se había producido ninguna novación. Reconoció que:

> hicimos alusión erróneamente a que los intereses impuestos por el Honorable Tribunal eran a base de un 4.25%, cuando surge claramente de la Sentencia emitida el 11 de octubre de 2023, estos son de un 9.25% anual. No obstante, aclaramos que la parte querellada NO reaccionó y muchos menos aceptó de manera alguna dicha propuesta. A contrario sensu, lo que surge del Exhibit A, mediante un correo electrónico con fecha del 31 de octubre de 2023 de la parte peticionaria, surge que la misma habría de ser discutida por el Lcdo. Enrique Pérez Acosta con la dirección de CBM y el Lcdo. Camacho. No obstante, la misma nunca le fue contestada por la parte peticionaria al suscribiente.[8]

A su vez informó que, recibió dos (2) cheques por concepto de pagos parciales y que el representante legal de CBM, informó que su cliente interesaba un plan de pagos. Se desprende del expediente que, el cheque número 128508, con fecha del 11 de diciembre de 2023 y emitido a favor del Licenciado Víctor M. Bermúdez Pérez por la cantidad de $3,133.44 dólares fue recibido por este último el 12 de diciembre de 2023, con una nota de "Recibido pago completo" en concepto de pago de honorarios.[9]

Por otro lado, surge de los autos que, el cheque número 128506 con fecha del 11 de diciembre de 2023 y emitido a favor del señor Ricardo Pedrosa Guzmán, por la cantidad de $3,137.44, y fue recibido por el Licenciado Bermúdez Pérez el 12 de diciembre

---

[5] Apéndice VIII del Recurso de *Certiorari*, págs. 30-32.
[6] Apéndice IX del Recurso de *Certiorari*, págs. 33-36.
[7] Apéndice IX del Recurso de *Certiorari*, pág. 33.
[8] Apéndice IX del Recurso de *Certiorari*, pág. 34.
[9] Apéndice IV del Recurso de *Certiorari*, pág. 16.

de 2023. Este último, anotó en el desglose del cheque: "Recibido pago parcial sujeto a discutir para plan de pagos".[10] El 25 de enero de 2024 y notificada el 29 de enero del mismo año, el TPI emitió *Orden* mediante la cual declaró *No Ha Lugar* la solicitud de paralización.[11]

Inconforme con el dictamen del Tribunal de Primera Instancia, el 7 de febrero de 2024 la parte peticionaria presentó el auto de *Certiorari* ante nos, donde le imputó al foro recurrido el siguiente señalamiento de error:

> PRIMER ERROR: ERRÓ EL HON. TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE PROCEDÍA CONTINUAR CON LA EJECUCIÓN DE LA SENTENCIA SIN RESO[L]VER QUE, ANTE LA OFERTA, ACCIONES DE LA QUERELLANTE APELADA Y LA ACEPTACIÓN DE LA QUERELLADA APELANTE SE CONFIGURÓ UNA NOVACIÓN MODIFICADA DE LA OBLIGACIÓN MODIFIC[Á]NDOSE AS[Í] LA CONTENIDA EN LA SENTENCIA QUE LA QUERELLADA ADEUDA A LA QUERELLANTE LA SUMA DE $10,216.32 Y NO ADEUDA SUMA ALGUNA A SU ABOGADO. SIN RENUNCIAR AL PLANTEAMIENTO PREVIO Y EN LA ALTERNATIVA SOSTENEMOS QUE EN RELACI[Ó]N A LOS HONORARIOS DE ABOGADO SE CONFIGURÓ EL PAGO Y LA ACEPTACIÓN O EL PAGO EN FINIQUITO O "ACCORD AND SATISFACTION".

Examinado el recurso en su totalidad con la comparecencia de ambas partes, procedemos a establecer el derecho aplicable y resolver.

**-II-**

***-A-***

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido. *Rivera et al. v. Arcos Dorados et al..*, 212 DPR 194, 207 (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012). La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1., establece los preceptos que regulan la expedición discrecional que ejerce el

---

[10] Apéndice V del Recurso de *Certiorari*, pág. 17.
[11] Apéndice I del Recurso de *Certiorari*, pág. 1.

Tribunal de Apelaciones sobre el referido recurso para la revisión de resoluciones y órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 709 (2019). En lo pertinente, la Regla 52.1, *supra*, dispone lo siguiente:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

La discreción del tribunal revisor no debe abstraerse del resto del Derecho y, por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera. *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 847 (2023); *Mun. Caguas v. JRO Construction*, 201 DPR 703, 712 (2019); *IG Builders et al. v. BBVAPR*, *supra*, pág. 338. Así pues, la discreción judicial para expedir o no el auto de *certiorari* no ocurre en un vacío ni en ausencia de parámetros. *Id.* Cónsono con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, orienta la función del tribunal intermedio para ejercer sabiamente su facultad discrecional y establece los criterios que debe considerar al determinar si procede o no expedir un auto de *certiorari*. *Torres González v. Zaragoza Meléndez*, *supra*; *Rivera et al. v. Arcos Dorados et al.*, *supra*; *Mun. Caguas v. JRO*

*Construction, supra,* pág. 709; *McNeil Healthcare v. Mun. Las Piedras I, supra,* págs. 404-405; *IG Builders et al. v. BBVAPR, supra,* págs. 338-339. La referida regla dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A)  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cabe precisar que el recurso de *certiorari* es un recurso extraordinario discrecional que debe ser utilizado con cautela y solamente por razones de peso. *Pueblo v. Díaz De León,* 176 DPR 913, 918 (2009). Es por ello que, los tribunales revisores deben limitarse a aquellos casos en que la ley no provee un remedio adecuado para corregir el error señalado. *Id.* Nuestro ordenamiento jurídico ha establecido que el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en circunstancias extremas y en donde se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *Rivera et al. v. Arcos Dorados et al., supra; Cruz Flores et al. v.*

*Hosp. Ryder et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Banco Popular,* 152 DPR 140, 155 (2000).

Cónsono a este ordenamiento, debemos señalar que nuestro Alto Foro ha expresado que la denegatoria de un recurso de *certiorari* por este tribunal intermedio no prejuzga los méritos del caso ni la cuestión planteada. Consiguientemente, los asuntos pueden volverse a plantear en el correspondiente recurso de apelación. *García v. Padró,* 165 DPR 324, 336 (2005). Es decir, la parte peticionaria de un recurso discrecional de *certiorari,* que no ha sido expedido ni dirimido en sus méritos, no queda privada de la oportunidad de reproducir ante este Tribunal de Apelaciones los mismos u otros planteamientos de error. *Núñez Borges v. Pauneto Rivera,* 130 DPR 749, 755-756 (1992).

### -B-

El Artículo 1182 del Código Civil de 2020, 31 LPRA sec. 9421, define la novación como la sustitución de una obligación previa por una nueva, la cual extingue la primera. La novación se puede llevar a cabo mediante la variación del objeto o condiciones principales de una obligación, sustituyendo la persona del deudor por otro, o la sustitución del antiguo acreedor por otro. Artículo 1183 del Código Civil de 2020, 31 LPRA sec. 9422.

En lo pertinente al caso ante nos, el profesor Garay Aubán puntualiza que para que una obligación quede extinguida por otra que la sustituya, es **indispensable** que ocurra una de dos cosas: **(1) que así se declare expresamente o; (2) que, aunque las partes no lo hayan declarado, la obligación original y la nueva, sean totalmente incompatibles entre sí**. Artículo 1184 del Código Civil de 2020, 31 LPRA sec. 9423. "Fíjense en el uso del lenguaje en este artículo: los términos son absolutos ('terminantemente', 'totalmente')". M. GARAY AUBÁN, COMPENDIO DE

OBLIGACIONES, INCLUYE REFERENCIAS AL CÓDIGO CIVIL 2020, 206 (2023). (Énfasis suplido).

El Tribunal Supremo de Puerto Rico ha reiterado que "**no existe novación extintiva cuando se confieran facilidades para el cumplimiento de la obligación primitiva como, por ejemplo, cuando se conceden prórrogas o plazos fraccionados, salvo que el plazo sea una condición esencial en cuyo caso se entraría en el ámbito de la novación por incompatibilidad**". *PDCM Assoc. v. Najul Bez*, 174 DPR 716, 726(2008); citando a *Miranda Soto v. Mena Eró* 109 DPR 473, 479-480 (1980). (Énfasis suplido).

Nuestro máximo foro judicial ha expresado que "**la novación nunca se presume, sino que ha de ser acreditada sin género alguno de duda**." *González v. Sucn. Cruz*, 163 DPR 449, 459 (2004). (Énfasis suplido). Igualmente, ha establecido que "**la novación en su modalidad extintiva es siempre una cuestión de intención y ésta debe inferirse de las circunstancias que rodean cada caso en particular**." *Íd.*, pág. 459. (Énfasis suplido). Es por ello que, la doctrina puntualiza el elemento de la voluntad de las partes como determinante de la novación. *Íd.,* pág. 459. De manera que, **es un elemento indispensable de la vertiente extintiva el *animus novandi,* es decir, la voluntad expresa de extinguir una obligación por otra.** *PDCM Assoc. v. Najul Bez, supra*, pág. 726. (Énfasis suplido). Ello, ya que la novación "encierra un asunto de intención que debemos inferir de las circunstancias de cada caso y de la voluntad de las partes". *Íd.* En atención a lo anterior, la profesora García Cárdenas sostiene que "**el consentimiento para la novación tiene que ser expreso y claro**". M. GARCÍA CÁRDENAS, DERECHO DE OBLIGACIONES Y CONTRATOS, 133 (MJ Editores 2020). (Énfasis suplido).

Por otro lado, señala el tratadista Carlos Lasarte que, bajo los requisitos de la novación, se requiere:

**(1)** que la voluntad o intención novatoria de los sujetos no deje lugar a dudas; **(2)** que la voluntad novatoria ha de ser común a ambos sujetos de la obligación y que, por tanto, la novación presupone el acuerdo y la consiguiente capacidad contractual de ambos para contraer una nueva obligación; **(3)** que la obligación primitiva u original sea válida. II, CARLOS LASARTE, DERECHO DE OBLIGACIONES, PRINCIPIOS DE DERECHO CIVIL, 178 (Marcial Pons) (24 ed. 2021).

Como podemos observar, dichos requisitos son cónsonos con nuestro ordenamiento jurídico vigente. Estos preceptos van dirigidos esencialmente a la intención o voluntad de las partes en común acuerdo sobre una obligación. Es decir, dicho requisito es esencial para el cumplimiento de la novación.

-**C**-

El pago en finiquito está codificado en nuestro Código Civil, bajo el artículo 1503, donde se establecen las formas de la transacción: [l]a transacción debe constar en un escrito firmado por las partes o en una resolución o una sentencia dictada por el tribunal. Si se refiere a derechos constituidos mediante escritura pública, se requiere esta formalidad. La inobservancia de estas reglas la hace nula. **El pago en finiquito tiene aquellos efectos que la ley establece**. 31 LPRA sec. 10647. (Énfasis suplido). Por otro lado, nuestro ordenamiento jurídico reconoce que una de las maneras de extinguir una obligación es mediante su pago o cumplimiento. Así pues, "se entiende efectuado el pago y extinguida la obligación cuando se ha ejecutado o entregado íntegramente la prestación debida al acreedor". Artículo 1117 Código Civil 2020, 31 LPRA sec. 9141.

Ahora bien, nuestro Tribunal Supremo incorporó a nuestra jurisdicción la doctrina de pago en finiquito o "accord and satisfaction" como otra forma de satisfacer o saldar una obligación. *López v. South P.R. Sugar Co.,* 62 DPR 238, 243 (1943). En virtud de dicha doctrina, un deudor puede satisfacer lo adeudado a su acreedor mediante una cantidad menor a la reclamada. Por tanto, si el acreedor recibe y acepta la cantidad ofrecida por el deudor,

está imposibilitado de reclamar la diferencia de lo que recibió y aceptó. *HR Elec., Inc. v. Rodríguez,* 114 DPR 236, 240 (1983). Si el acreedor entiende que la cantidad a la que tiene derecho es mayor a la que le entregó el deudor, tiene que devolver el pago y luego reclamar la totalidad de la deuda. *A. Martínez & Co. v. Long Construction, Co.,* 101 DPR 830, 834 (1973).

Para que se configure un pago en finiquito y se produzca el efecto de extinguir la obligación, deben concurrir los siguientes tres (3) elementos: (1) que exista una reclamación ilíquida o sobre la cual exista controversia *bona fide*; (2) un ofrecimiento de pago por el deudor; y (3) una aceptación del ofrecimiento de pago por el acreedor. *López v. South P.R. Sugar Co., supra,* págs. 244-245; *HR Elec., Inc. v. Rodríguez, supra,* pág. 240. En torno al primero de estos requisitos, el Tribunal Supremo de Puerto Rico ha resuelto que una reclamación ilíquida es una sobre la cual hay controversia entre las partes. Ello, distinto a cuando nos referimos a una cantidad líquida sobre la cual no existe incertidumbre por ser una cierta y determinada. Así, por ejemplo, en *López v. South P.R. Sugar Co., supra,* el alto foro concluyó que no operaba la doctrina en pago en finiquito porque en cuanto a la exactitud de la cantidad reclamada por el demandante no existía disputa, sino simplemente en cuanto a la obligación de pagarla. *Íd.,* págs. 245-246. Ahora bien, al evaluar este requisito, no sólo se exige la iliquidez de la deuda, sino también la ausencia de opresión o indebida ventaja de parte del deudor sobre su acreedor. *Feliciano Aguayo v. Mapfre,* 207 DPR 138, 160 (2021). Esta figura prosperará únicamente en aquellos casos en los cuales se presenten circunstancias claramente indicativas de que el deudor intenta extinguir su obligación. *Íd.*

En relación con el segundo requisito, es necesario que el ofrecimiento del deudor esté acompañado por declaraciones o actos

que evidencien que el pago ofrecido al acreedor es total, completo y definitivo. *Íd.*, pág. 163. **El Tribunal Supremo ha expresado que este requisito también se cumple cuando el acreedor entiende que el pago ha sido entregado como pago final, a pesar de que el mismo no vino acompañado por declaraciones o actos que claramente indiquen que el pago ofrecido por el deudor al acreedor es en pago total, completo y definitivo de la deuda existente entre ambos**. *HR Elec., Inc. v. Rodríguez, supra,* pág. 242. (Énfasis suplido). De igual manera, la doctrina exige que este ofrecimiento se realice de buena fe. *Feliciano Aguayo v. Mapfre, supra,* pág. 163.

Así también, sobre el tercer requisito, nuestro Tribunal Supremo ha aclarado que tienen que concurrir actos afirmativos, posteriores al recibo del pago, que claramente indiquen la aceptación de la oferta por parte del acreedor, de modo tal que, **en ausencia de actos claramente indicativos de la aceptación de la oferta por parte del acreedor, la mera retención de un pago, por un período razonable, no constituirá la aceptación del pago ofrecido y no aplicará la doctrina de aceptación como finiquito**. *HR Elec., Inc. v. Rodríguez, supra,* pág. 244. (Énfasis suplido). Es decir, el acreedor cuenta con un tiempo razonable para investigar y consultar cuál es el mejor proceder.

**La aceptación del ofrecimiento se perfecciona cuando el acreedor retiene y acepta el cheque bajo el entendimiento de que el instrumento se remitió como saldo total de la obligación**. *Feliciano Aguayo v. Mapfre, supra,* pág. 163. (Énfasis suplido). Por ello, es necesario que el acreedor manifieste actos claramente indicativos de la aceptación de la oferta de pago. *HR Electroplanting v. Rodríguez, supra,* págs. 243-244. En ausencia de opresión o indebida ventaja de parte del deudor y mediando circunstancias claramente indicativas para el acreedor de que el

cheque remitido lo era en pago y saldo total del balance resultante de la liquidación final del contrato, están presentes todos los requisitos la figura de pago en finiquito. *A. Martínez & Co. v. Long Const. Co., supra*, pág. 834.

La aceptación del cheque por el acreedor bajo estas premisas equivale a dar su conformidad a la liquidación del contrato que lo acompañaba. Por lo tanto, si el deudor envía un cheque al acreedor como pago total de una deuda y el acreedor lo endosa y lo cobra, aunque se reserve en el endoso o de otra forma el derecho de reclamar cualquier diferencia, se extingue la deuda por efecto de "accord and satisfaction". O. SOLER BONNIN, *Manual para el Estudio de la Teoría General de las Obligaciones y de Contrato en el Derecho Civil Puertorriqueño,* San Juan, Ediciones SITUM, 2014, pág. 86. Cualquier acción unilateral por parte del acreedor de tachar, borrar o modificar en cualquier forma el concepto de endoso sustituyéndolo por otro de su propia redacción, no excluye la aplicación de la doctrina. *A. Martínez & Co. v. Long Const. Co., supra*, pág. 834.

Ahora bien, si el acreedor le comunica al deudor, antes de cambiar el cheque, que lo acepta como pago parcial, entonces la doctrina del pago en finiquito no surtiría efecto, manteniéndose la deuda inalterada. *Gilormini Merle v. Pujals,* 116 DPR 482, 484 (1985). En cambio, "[e]stá generalmente establecido que si un cheque con anotación indicativa de que se ofrece en pago total o transacción de una reclamación disputada o sin liquidar, se envía por el deudor a su acreedor, y estos extremos se aclaran al acreedor, éste último no puede evadir el dilema de devolver el cheque o retenerlo en pago total de su acreencia con simplemente borrar, suprimir o tachar las palabras que expresa dicho concepto de endoso". *A. Martínez & Co. V. Long Const. Co., supra*, pág. 835.

**Es decir, debe existir un acto afirmativo por parte del acreedor manifestando al deudor su aceptación de forma parcial y no total, antes de cambiar el cheque**. Por lo tanto, en aquellos casos en los que un deudor le envía un cheque al acreedor por una cantidad menor con una anotación indicativa de que se ofrece en saldo o pago total de la deuda en disputa entre las partes; si el deudor al recibir el cheque, lo acepta y lo cobra, es aplicable la figura "accord and satisfaction" y[,] por lo tanto, se extingue la obligación. *A. Martínez & Co. v. Long Const. Co.*, *supra*, pág. 833. (Énfasis suplido).

El Tribunal Supremo de Puerto Rico ha manifestado que esta norma de derecho común, en cierto modo, opera en un área de contratación rápida propia de nuestros días y es más asequible para la terminación en corto plazo de diferencias, incertidumbres y mutuas reclamaciones que el contrato de transacción definido en el Artículo 1497 del Código Civil, 31 LPRA sec. 10641, el cual generalmente nace de un pleito pendiente o a punto de comenzar. *A. Martínez & Co. V. Long Const. Co.*, *supra*, pág. 834. Así pues, determinó el más alto foro judicial que se podría llamar al "accord and satisfaction" la transacción al instante dada su viabilidad, su liberación de requisitos formales y la prontitud de su acción, suplantando la contienda y la incertidumbre por la concurrencia de opuestas pretensiones. *Íd.*

En esta misma línea, la Ley Núm. 208 del 17 de agosto de 1995, según enmendada, conocida como "Ley de Transacciones Comerciales", fue promulgada con el objetivo de facilitar las transacciones comerciales, uniformar el derecho entre las distintas jurisdicciones y fomentar la expansión de las prácticas comerciales mediante la incorporación de costumbres, usos y acuerdos entre las partes involucradas. 19 LPRA sec. 401. En aras de cumplir con dicho objetivo, esta ley codifica la jurisprudencia sobre pago en

finiquito. En síntesis, según la sección 2-311, se requiere como condición para que se configure el "pago en finiquito" la existencia de los requisitos siguientes: (1) que el deudor ofrezca de buena fe el instrumento al reclamante en pago total de la reclamación, (2) la existencia de una reclamación ilíquida o una controversia *bona fide* y (3) que el reclamante haya obtenido el pago del instrumento. 19 LPRA sec. 611. *Feliciano Aguayo v. Mapfre, supra*, pág. 167.

Es menester aclarar que, el mero cambio del cheque no conlleva automáticamente a la aplicación de la doctrina de pago en finiquito. *Feliciano Aguayo v. Mapfre, supra*, pág. 169. Esto es así ya que la Ley de Transacciones Comerciales, *supra*, permite el repago de la cantidad de dinero especificada en el cheque dentro de los noventa (90) días siguientes al pago del instrumento. 19 LPRA sec. 611 (c)(2). Es decir, si la persona cobra el cheque sin percatarse de que era una oferta de pago completo de la reclamación, se aplica el término de gracia. *Feliciano Aguayo v. Mapfre, supra*, pág. 169.

No obstante, si se demuestra que la persona cobró el cheque con pleno conocimiento de que era un pago final, este término no será aplicable. *Íd*. La responsabilidad de aplicar esta excepción o término de gracia para hacer el repago de la cantidad incluida en el cheque recae únicamente en los tribunales *Íd*. Por último, nuestro máximo foro judicial ha decidido que cuando la controversia se centra en la aplicación de la defensa de pago por finiquito luego de que una persona haya aceptado explícita o implícitamente los cambios en un cheque, lo más conveniente es ventilar dicha disputa en un juicio plenario. *Gilormini Merle v. Pujals Ayala, supra*, pág. 485.

**-III-**

La parte peticionaria nos solicita que ejerzamos nuestra facultad discrecional para revocar una *Orden* de *Solicitud de*

*Expedición de Orden de Descubrimiento de Prueba para* Ejecución de *Sentencia* que fue emitida el 12 de diciembre de 2023 por el foro de origen.[12] En su comparecencia ante el Foro a *quo*, la parte peticionaria solicitó se paralizara la ejecución de la sentencia del 11 de octubre de 2023, arguyendo que hubo novación, ya que sostiene que entre la parte recurrida y CBM hubo un intercambio de correos y una entrega de cheques que modificaron la cantidad, el interés acumulado, la penalidad, los honorarios por concepto de abogados de una sentencia que es final y firme. En adición, CBM solicitó al TPI que resolviera si en efecto, se llevó a cabo una novación entre las partes. En su señalamiento de error, CBM sostiene que erró el foro de instancia al determinar que procedía la ejecución de la *Sentencia* sin resolver si se había configurado la novación de la obligación impuesta por la *Sentencia* por la aceptación de los pagos parciales a favor del señor Pedroza Guzmán, y o en la alternativa, si se configuró un pago en finiquito relacionado con los honorarios de abogado. *Respondemos en la negativa.*

En este caso, ambas partes coinciden en que el peticionario entregó dos (2) cheques, uno por la cantidad de $3,133.44 por concepto de honorarios de abogados, y otro por la cantidad de $3,137.44 por concepto de pago parcial a favor del señor Pedroza Guzmán. Los cheques emitidos por CBM fueron en consecuencia a una comunicación extrajudicial iniciada por el señor Pedroza Guzmán del 31 de octubre de 2023 para la ejecución de la *Sentencia* otorgada a su favor.[13] Sin embargo, ambas partes confieren interpretaciones distintas sobre el alcance de los pagos parciales que lleva a pensar a la parte peticionaria que obró una novación, restando por pagar solo los $10,216.32.

---

[12] Apéndice VII del Recurso de *Certiorari*, págs. 18-19.
[13] Apéndice III del Recurso de *Certiorari*, pág. 15.

Ante la diferencia monetaria de los cheques, el representante legal del señor Pedroza Guzmán le inquirió a CBM sobre la cantidad que faltaba debido a que, según sus cálculos era una cantidad mayor. El representante legal de CBM señaló que su cliente interesaba un plan de pago. Tal como surge del cheque número 128506 recibido por el Licenciado Bermúdez Pérez, tal planteamiento estaba sujeto a discutir cualquier consideración de una aprobación de su cliente, es decir, el señor Pedroza Guzmán. Adviértase que, CBM intenta formalizar una novación "modificativa" ausente en derecho. Bajo dicha pretensión no concurren con los requisitos para novación extintiva al no haber mediado el consentimiento de la parte recurrida. Adviértase que, el haber entregado un pago parcial a su representante legal, quien no es el acreedor de la deuda, no otorga tal consentimiento. La falta de anuencia del señor Pedroza Guzmán no puede convalidarse mediante la eliminación de una partida económica sustancial del obrero favorecido por el decreto judicial luego de doce (12) años de litigio.

En resumidas cuentas, para que operara la novación en el caso de autos, era imprescindible el consentimiento o la voluntad del señor Pedroza Guzmán y en adición era necesario que así se declarara expresamente o que, aunque las partes no lo hayan declarado, la obligación original y la nueva, sean totalmente incompatibles entre sí.

Como parte de los requisitos en la figura de novación, reiteramos que nuestro más alto foro ha dispuesto que la novación **no opera cuando se confieran facilidades para el cumplimiento de la obligación primitiva como, por ejemplo, cuando se conceden prórrogas o plazos fraccionados, salvo que el plazo sea una condición esencial en cuyo caso se entraría en el ámbito de la novación por incompatibilidad.** *PDCM v. Najul Bez,*

*supra*, pág. 726. Es decir, nuestra jurisprudencia ha sido enfática que la novación no operará cuando se concedan plazos de la condición primitiva, en este caso, la cantidad adeudada por concepto de pago de salarios, intereses, penalidad y honorarios de abogado. La actuación de CBM impide que se consume la figura de la novación en el caso ante nuestra consideración. La pretensión de emitir pagos parciales o fraccionados imposibilita llevar a cabo una novación.

La parte peticionaria se ha negado a pagar la suma adeudada de manera temeraria. Tal como fue determinado por el Tribunal de Primera Instancia en su *Sentencia* y citamos:

> "En ese sentido, la parte querellante presentó prueba creída por el tribunal que dicho beneficio era parte de su salario. También, que el patrono lo reconocía por escrito y verbalmente aun cuando en el caso lo negó temerariamente. [...] **Para finalizar, no somos ajenos a que la parte querellada ha demostrado una conducta temeraria en el manejo de su defensa. Así, entre otras cosas, obligó a litigar asuntos que se pudieron resolver sin la necesidad de someter a la parte a un engorroso trámite judicial.** Negó reiteradamente el derecho del empleado al cobro de sus comisiones a pesar de que los propios documentos del patrono lo reflejaban claramente. Además, incurrió en conducta contraria al deber de descubrir la prueba. Retrasó el caso mediante el cambio en varias ocasiones de representación legal, etc.".[14] (Énfasis suplido).

Ante la negativa de efectuar el pago de la cuantía impuesta por la *Sentencia*, el señor Pedroza Guzmán tuvo que recurrir ante el foro de origen para dar conocimiento del asunto y solicitar la ejecución de dicha *Sentencia*. Nótese que, este litigio abarca un trámite procesal de más de doce (12) años por la conducta que ha desplegado CBM en pagarle al señor Pedroza Guzmán lo obtenido mediante decreto judicial que incluye pagos adeudados, penalidades, los intereses de estos pagos, así como los intereses generados por los honorarios de abogados. Al presente, dicha deuda continua en mora por la falta de pago de CBM.

---

[14] Apéndice II del Recurso de *Certiorari*, pág. 13.

Expuesto el derecho antes esbozado, resulta forzoso concluir que no se configuró novación entre las partes, toda vez que no cumplió con los requisitos de dicha figura jurídica. Entiéndase que, haya voluntad de ambas partes para que una obligación quede extinguida por otra que la sustituya, que así fue declarado terminantemente y que ambas fueran totalmente incompatibles. 31 LPRA sec. 9423. En adición a lo anteriormente expuesto, el haber solicitado plazos para el cumplimiento de la condición primitiva **impide** que se configure una novación entre las partes como sucedió en la controversia ante nos, según la jurisprudencia establecida.

Finalmente, sobre el pago de los honorarios de abogados en el cheque recibido por el Licenciado Bermúdez Pérez, y según expuesto en los cálculos, el recibo del cheque número128508 por la cantidad de $3,133.44 tampoco novó ni se configuró un pago en finiquito en lo correspondiente al pago de los honorarios por concepto de abogados. *Nos explicamos.* El Licenciado Bermúdez Pérez le inquirió a CBM la totalidad del pago. De igual forma, en representación de su cliente, le notificó a CBM que los cheques eran pagos parciales. Es decir, que **debe existir un acto afirmativo por parte del acreedor manifestando al deudor su aceptación de forma parcial y no total, antes de cambiar el cheque.** *Gilormini Merle v. Pujals, supra*, pág. 484. (Énfasis suplido). Esta comunicación tuvo lugar cuando el Licenciado Bermúdez Pérez recibió los cheques. En adición a ello, el Licenciado Bermúdez Pérez emitió una comunicación escrita a estos fines.[15]

Según expuestos los requisitos de la figura jurídica del pago en finiquito, en resumidas cuentas, son: (1) "**que exista una reclamación ilíquida o sobre la cual exista controversia *bona***

---

[15] Apéndice III del Recurso de *Certiorari*, pág. 15.

*fide*; **(2) un ofrecimiento de pago por el deudor**; y (3) **una aceptación del ofrecimiento de pago por el acreedor**". *López v. South P.R. Sugar Co.*, *supra*, págs. 244-245. (Énfasis suplido).

Tras un exhaustivo análisis de los documentos que obran en el expediente ante nuestra consideración, incluyendo la *Moción Urgente de Paralización, su Oposición,* y los documentos anejados a este expediente, hemos llegado a la conclusión de que en el presente caso no se extinguió la obligación de CBM mediante la figura de pago en finiquito. Esto es así ya que es imperativo cumplir con los tres requisitos estipulados por la doctrina antes expuesta. Es decir, no basta con cumplir uno de los elementos, sino que es necesario que estén presentes los tres para que el pago en finiquito sea válido. Respecto al primer requisito, no cabe duda de que existe controversia respecto al monto de la deuda. Por una parte, CBM indica que le debe $10,216.32 al recurrido, mientras que, por otro lado, el señor Pedroza Guzmán afirma que se le debe $34,177.27, lo cual evidencia la existencia de una reclamación ilíquida. No obstante, el cumplimiento con dicho requisito, por sí solo no es suficiente para considerar la deuda como saldada.

Por otro lado, CBM no cumplió con el segundo requisito de la figura de pago en finiquito. Es decir, no hubo un ofrecimiento de pago por parte del peticionario hacia el señor Pedroza Guzmán que indicara que su intención era extinguir la deuda. Por el contrario, según se desprende del propio cheque # 128508, la nota del desglose especifica que: "Recibido pago parcial sujeto a discutir para plan de pagos".[16] Estas alegaciones van en contra de la propia aplicación de la doctrina de pago por finiquito. Es decir, para que dicha figura jurídica sea efectiva, es necesario que el deudor reconozca la existencia de una deuda, admita que no ha sido

---

[16] Apéndice IV del Recurso de *Certiorari,* pág. 16. Apéndice V del Recurso de *Certiorari,* pág. 17.

pagado y ofrezca una cantidad determinada para satisfacer la obligación. Además, del referido cheque no surge que CBM haya expresado que emitió el cheque como pago total y definitivo.

Por último, tampoco se satisfizo el tercer requisito establecido en la figura del pago por finiquito. Esto es, el señor Pedroza Guzmán no aceptó el ofrecimiento de CBM como pago final de la deuda. Todo lo contrario, tan pronto recibió los cheques por parte de CBM, envió un correo electrónico manifestando su intención de aceptar el cheque como un pago parcial y no final. Más adelante, el 18 de diciembre de 2023, reiteró su posición.[17]

Estas comunicaciones demuestran que el señor Pedroza Guzmán no estaba aceptando el dinero como pago completo de la deuda reclamada. El hecho de que haya el Licenciado Víctor Bermúdez Pérez recibiera el cheque número 128508 por la cantidad de $3,133.44 y le añadiera una nota de "Recibido pago completo" en concepto de pago de honorarios  el cheque no altera nuestra determinación, ya que esto no garantiza automáticamente la aplicación del pago por finiquito bajo las circunstancias presentes en el caso de autos, toda vez que las manifestaciones del Licenciado Bermúdez Pérez sobre la aceptación del pago de manera parcial fueron contundentes al inquirir que  cualquier transacción estaba condicionada a la aceptación del señor Pedroza Guzmán.

La primera comunicación del Licenciado Bermúdez Pérez a esos fines fue el 31 de octubre de 2023 y, la segunda misiva remitida reiterando lo anterior fue de fecha de 18 de diciembre de 2023. De ninguna manera se puede entender que recibir este pago, finiquitó los intereses generados de los honorarios de abogado, toda vez que, los intereses le corresponden al cliente. Es decir, quien podía dar el consentimiento para renunciar a los mismos, era el señor Pedroza Guzmán, y en ausencia de dicha aceptación,

---

[17] Apéndice VII del Recurso de *Certiorari*, págs. 20-22.

dicha obligación continua en mora. Ante esta situación, resulta forzoso concluir que no basta con cumplir con uno de los elementos, que sería el ofrecimiento de pago por el deudor, sino que es necesario que estén presentes los tres para que el pago en finiquito sea válido.

En suma, colegimos que el foro primario no erró al denegar la solicitud de paralización presentada por CBM, puesto que en el presente caso no concurren todas las circunstancias que permiten invocar la defensa de pago en finiquito y se entienda extinguida la deuda.  Por otro lado, es forzoso concluir que al caso de marras no le es de aplicación la figura jurídica de novación al no concurrir los requisitos de la figura jurídica antes expuesta, por lo que concluimos que el Tribunal de Primera Instancia no cometió el error esgrimido.

**-IV-**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se expide el auto de *certiorari* y se *confirma* la *Orden* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones