Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| GLENDALY HERNÁNDEZ ACOSTA<br><br>Apelante<br><br>V.<br><br>ÁNGELES TORRES SÁNCHEZ Y OTROS<br><br>Apelados | KLAN202400852 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: GB2022CV00066<br><br>Sobre: Daños, Incumplimiento de Contrato, Interferencia Torticera |
|---|---|---|

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 28 de octubre de 2024.

El 18 de septiembre de 2024, compareció ante este Tribunal de Apelaciones, la Sra. Glendaly Hernández Acosta (en adelante, parte apelante o señora Hernández Acosta), por medio de *Apelación*. Mediante esta, nos solicita que revisemos la *Sentencia* emitida y notificada el 28 de agosto de 2024, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. En virtud del aludido dictamen, el foro *a quo* declaró Ha Lugar la *Moción de Solicitud de Desestimación* presentada el 24 de marzo de 2022, por Ángeles Torres Sánchez (en adelante, licenciada Torres Sánchez), Antonio Arrieta Sepúlveda y Arrieta Realty (en adelante, parte apelada) y consecuentemente, desestimó la *Demanda* instada por la parte apelante.

Por los fundamentos que adelante se exponen, se *revoca* el dictamen apelado y se devuelve el caso al foro primario para la

continuación de los procedimientos de conformidad con lo aquí resuelto.

**I**

El caso que nos ocupa tiene su génesis en una *Demanda* sobre incumplimiento e interferencia de contrato, contrato en daño de tercero y daños y perjuicios por incumplimiento de contrato incoada el 31 de enero de 2022 por la señora Hernández Acosta en contra de la parte apelada y la señora Maricarmen Curet Miranda (en adelante, señora Curet Miranda). El 4 de febrero de 2022, la parte apelante interpuso *Demanda Enmendada,* a los fines de aclarar cronológicamente los eventos que dieron lugar a su reclamo.

En apretada síntesis, la parte apelante alegó que, el 14 de diciembre de 2021 suscribió como Parte Compradora, un contrato de Opción de Compraventa titulado Contrato de Compraventa con la licenciada Torres Sánchez como Parte Cedente. Mediante el aludido contrato, la licenciada Torres Sánchez se obligó a venderle a la parte apelante una propiedad inmueble sita en The Village at Suchville #1 San Miguel, Guaynabo, Puerto Rico.

Adujo la parte apelante que, en virtud del aludido contrato, le entregó a la licenciada Torres Sánchez, por conducto del corredor de bienes raíces, el señor Antonio Arrieta Sepúlveda y/o Arrieta Realty, un depósito en la suma de siete mil dólares (7,000). Los restantes doscientos sesenta y ocho mil dólares ($268,000) debían ser entregados a favor de los acreedores hipotecarios y el sobrante a la licenciada Torres Sánchez en o antes del 28 de enero de 2022.

Añadió que, conforme a lo acordado por las partes, una vez sometida la opción, la Parte Cedente y el señor Antonio Arrieta Sepúlveda debían cooperar y hacer todas las gestiones para que el cierre se llevara a cabo en el término de cuarenta y cinco (45) días calendario, que vencía el 28 de enero de 2022.

La parte apelante acotó que, a pesar de que aún estaba vigente el contrato de opción en cuestión, la licenciada Torres Sánchez llevó a cabo otro negocio jurídico con la señora Curet Miranda mediante el cual le traspasó a esta última, la propiedad objeto del aludido contrato.

Según lo alegado, la parte apelante advino en conocimiento de que la licenciada Torres Sánchez le había vendido la propiedad objeto del contrato de opción el 11 de enero de 2022. Lo anterior, a pesar de que el señor Arrieta Sepúlveda tenía conocimiento que la apelante había originado el préstamo para adquirir la propiedad y de que el contrato de opción de compra aún estaba vigente.

En la *Demanda* se alegó que, el 9 de enero de 2022, la parte apelante le envió una reclamación extrajudicial a la licenciada Torres Sánchez, exigiéndole el cumplimiento específico del Contrato de Compraventa, pero la licenciada Torres Sánchez nunca contestó.

Sostuvo, además que, con posterioridad, la señora Curet Miranda y el señor Arrieta Sepúlveda (este último, como corredor de bienes raíces), han mercadeado la propiedad para la venta por la suma de doscientos noventa y ocho mil dólares ($298,000).

El 24 de marzo de 2022, la licenciada Torres Sánchez, Antonio Arrieta Sepúlveda y Arrieta Realty, presentaron ante el foro primario, *Moción de Solicitud de Desestimación.* En el referido escrito incluyeron, además, su alegación responsiva. Subsiguientemente, el 25 de abril de 2022, la parte apelante se opuso a dicho petitorio mediante *Oposición a "Moción de Solicitud de Desestimación y Solicitud de Sentencia Sumaria".*

Con posterioridad, el 25 de mayo de 2022, la licenciada Torres Sánchez, Antonio Arrieta Sepúlveda y Arrieta Realty, interpusieron *Oposición a Solicitud de Sentencia Sumaria.*

El 22 de julio de 2022, el foro *a quo,* emitió Resolución mediante la cual dispuso lo siguiente:

Luego de estudiar los hechos del caso y de evaluar las mociones presentadas, este Tribunal declara NO HA LUGAR la *"Oposición a "Moción de solicitud de desestimación" y solicitud de Sentencia Sumaria"*, presentada por la parte demandante, señora Hernández, el 25 de abril de 2022. En consecuencia, se ordena la continuación de los procedimientos.

El 22 de febrero de 2023, la parte apelante interpuso ante el foro primario *Moción de Desistimiento Voluntario con Perjuicio de la Reclamación contra la Co-demandada Maricarmen Curet.* En virtud de lo anterior, en igual fecha, el foro apelado emitió *Sentencia Parcial*[1] mediante la cual decretó el archivo con perjuicio de la acción en cuanto a la señora Curet Miranda sin la especial imposición de costas ni horarios de abogado.

El 30 de junio de 2023, la parte apelante presentó ante la primera instancia judicial *Moción de Sentencia Sumaria.*[2] Mediante *Orden* del 7 de julio de 2023, el foro primario le concedió a la parte apelada el término de treinta (30) días para presentar su posición con relación al referido escrito.

Subsiguientemente, el 31 de agosto de 2023, la parte apelante incoó ante el foro apelado *Moción Reiterando Sentencia Sumaria.* El 1ro de septiembre de 2023, la parte apelada interpuso ante el foro primario *Moción en Oposición a Solicitud de Demandante a que se Tenga por Presentada la Solicitud de Sentencia Sumaria y Solicitud de Prórroga.* En atención a la aludida moción, el 1ro de septiembre de 2023, el foro *a quo* le concedió a la parte apelada el término adicional de quince (15) días para presentar su posición en torno a la moción de sentencia sumaria presentada por la parte apelante.

---

[1] Aunque en la *Sentencia Parcial* se consignó la fecha del 22 de febrero de 2022, colegimos que se debió a un error gramatical involuntario, ya que debió leer 2023.
[2] A la moción de sentencia sumaria se anejaron los siguientes anejos: 1A) Transcripción de la deposición del señor Antonio Arrieta; 1B Transcripción de la deposición de la licenciada Torres Sánchez; 2) Copia impresa de mensajes de textos; 3) Declaración Jurada de la señora Glendaly Hernández Acosta; 4) Contrato de Compraventa; 5) Copia impresa del correo electrónico de 13 de diciembre de 2021; 6ª) Cotización; 6B) Loan Estimate; 7) Cheque; 8) Copia impresa del correo electrónico de 11 de abril de 2023; 9) Anuncio de Clasificados Online; 10) Documentos del préstamo.

Así las cosas, el 21 de septiembre de 2023, la parte apelante presentó *Tercera Moción Reiterando Sentencia Sumaria.* Posteriormente, transcurrido el término concedido a la parte apelada para presentar su posición, sin que esta compareciera, mediante *Orden* del 25 de septiembre de 2023, el foro apelado dio por sometida la moción de sentencia sumaria sin oposición de la parte apelada. Ese mismo día, compareció la parte apelada mediante *Moción Informativa y en Reconsideración a que se Tenga por Presentada la Solicitud de Sentencia Sumaria.* En igual fecha, la parte apelada presentó *Moción Oposición a Solicitud de Sentencia Sumaria.*

En respuesta, el 10 de octubre de 2023, la parte apelante interpuso *Réplica a Oposición a Solicitud de Sentencia Sumaria.* Respecto a la anterior moción, la parte apelada incoó *Dúplica a Oposición a Solicitud de Sentencia Sumaria.*

El 6 de noviembre de 2023, el foro primario emitió la siguiente *Orden*:

> Evaluado el expediente se dejan sin efecto las órdenes anteriores en cuanto a la moción de sentencia sumaria y resolverá por escrito. Se les prohíbe a las partes presentar escritos adicionales sobre este asunto hasta tanto se resuelva.

En atención a los aludidos escritos presentados por las partes con relación a la moción de sentencia sumaria y su respectiva oposición a la misma, al 13 de febrero de 2024, el foro *a quo* emitió *Resolución.* En su dictamen consignó treinta (30) determinaciones de hechos que, a su juicio, no están en controversia y esbozó cinco (5) controversias de hechos, a saber:

1. Si como resultado de la cancelación del contrato de opción, la Srta. Glendaly Hernández dejó de percibir $50,000 en el valor de la Propiedad, pues es precio de venta en la opción fue $275.000, y las propiedades equivalentes en The Village at Suchville están actualmente para la venta en $325,000.

2. Si además de los daños causados por el valor de la Propiedad, la demandante ha sufrido daños económicos por concepto de "daño emergente futuro", los cuales continuará sufriendo por los próximos treinta (30) años, los que calcula en $132,174, debido a los cambios en la tasa de interés de los préstamos hipotecarios, cambio que tuvo lugar en el año 2022, luego de la resolución del contrato.

3. Si la parte demandante incumplió con el contrato de opción a compra y compraventa en la forma y manera que debía comprarse la propiedad, por el proceso donde estaba pasando la demandada que tenía que vender en un *short sale*, por su situación legal y económica en ese momento.

4. Se la demandante aceptó la devolución de su depósito de opción por $7,000 como un pago en finiquito, por tanto, carece de una reclamación genuina frente a la parte demandada.

5. Si las aseveraciones de daños que hace la demandante son totalmente especulativas y para probarlas se requiere de una prueba que la demandante no puede proveer.

Consecuentemente, declaró No Ha Lugar la solicitud de sentencia sumaria interpuesta por la parte apelante.

Parcialmente en desacuerdo con lo dictaminado, el 16 de febrero de 2024, la parte apelante presentó *Moción de Reconsideración Parcial* en la que, eminentemente, planteó que al caso de marras no le es de aplicación la figura del pago en finiquito.

En respuesta, el 26 de febrero de 2024, la parte apelada presentó *Moción Oposición a Moción de Reconsideración.* En esencia, la parte apelada hace referencia a las controversias señaladas por la Juzgadora de Instancia y aduce que, son controversias de hechos que requiere el desfile de prueba, por lo que no es susceptible de ser resuelto de forma sumaria.

Atendidos los escritos de las partes, el 28 de agosto de 2024, el Tribunal de Primera Instancia emitió *Sentencia* apelada en la cual declaró Ha Lugar la *Moción de Solicitud de Desestimación* presentada por la parte apelada y consecuentemente, desestimó la *Demanda*

instada por la parte apelante.  En el referido dictamen, el foro *a quo*, consignó las siguientes determinaciones de hechos:

1. Entre el señor Arrieta y la Lcda. Torres Sánchez se suscribió un contrato verbal para la venta de la propiedad, sita en The Village At Suchville 1 (Propiedad). La Lcda. Torres Sánchez autorizó y puso en manos del realtor Arrieta todo lo que tenía que ver con la venta de la casa.

2. El acuerdo entre el señor Arrieta y la Lcda. Torres Sánchez consistía en la venta de la Propiedad, cobrar un tres por ciento (3%) de comisión, mercadearla y llevar clientes hasta el día del cierre.

3. El 25 de noviembre de 2021, el señor Arrieta se comunicó, por vía de mensaje de texto con la Srta. Glendaly Hernández, para mostrarle la Propiedad.

4. El 26 de noviembre de 2021, el señor Arrieta le envió a la Srta. Glendaly Hernández, por vía de mensaje de texto el contacto de un "*mortgage*", porque según él esa persona podía cerrarle su préstamo hipotecario bien rápido. Sin embargo, la Srta. Glendaly Hernández le dijo: "Te va a llamar el muchacho de Oriental. Le va a confirmar que yo cualifico. Y le envía la carta de precualificación tan pronto llegue. Se llama William". La contestación del señor Arrieta fue: "Okay".

5. Según reconoce el codemandado, señor Arrieta, desde el 26 de noviembre de 2021, la Srta. Glendaly Hernández ya le había comunicado que ella ya había iniciado la originación del préstamo y que estaba cualificada.

6. El 27 de noviembre de 2021, la Srta. Glendaly Hernández le envió otra comunicación al señor Arrieta, donde le informa que ya le enviaron los papeles para originar el préstamo.

7. El 10 de diciembre de 2021, la Srta. Glendaly Hernández suscribió el contrato de opción para comprar la Propiedad, en The Village At Suchville 1.

8. En el contrato, comparecieron la Lcda. Torres Sánchez (Parte Cedente o Vendedora) y la Srta. Glendaly Hernández.

9. El Sr. Antonio Arrieta, entonces presidente de Arrieta Realty, fungió como el agente corredor de bienes raíces de este negocio.

10. En el contrato de opción firmado por la Srta. Glendaly Hernández, el 10 de diciembre de 2021, se le concedía a la parte compradora un término de setenta y dos (72) horas para iniciar el proceso en la institución financiera de su preferencia.

11. El 13 de diciembre de 2021, dentro de las setenta y dos (72) horas de firmar su contrato de opción, la Srta. Glendaly Hernández le solicitó al señor Arrieta por mensaje de texto que le enviara el contrato firmado por la Lcda. Torres Sánchez, indicándole que: "Lo necesito para poder originar".

12. El 13 de diciembre de 2021, de igual manera, la Srta. Glendaly Hernández le envió al originador del préstamo (William) los documentos de rigor para el trámite hipotecario.

13. Así las cosas, la Lcda. Torres Sánchez firmó el contrato de opción, el 14 de diciembre de 2021.

14. Reconoce el señor Arrieta, bajo juramento, que antes del 14 de diciembre de 2021, fue la Srta. Glendaly Hernández, quien dio seguimiento para cumplir con estos términos del contrato.

15. En virtud de la cláusula décima sexta del contrato de opción, la Srta. Glendaly Hernández tenía hasta el 17 de diciembre de 2021, para iniciar el proceso del préstamo en la institución financiera, ya que el contrato era válido, una vez se firmara por la Lcda. Torres Sánchez. No obstante, ya la Srta. Glendaly Hernández había iniciado el proceso.

16. Tras la entrega del contrato de opción firmado por la Lcda. Torres Sánchez, el préstamo de la Srta. Glendaly Hernández fue originado, el 17 de diciembre de 2021.

17. El 18 de diciembre de 2021, la Sra. Curet Miranda le envío una comunicación, por mensaje de texto al codemandado, señor Arrieta, con su correo electrónico, para que le hiciera llegar un acuerdo de opción para la propiedad en The Village At Suchville 1, para comprarla "cash".

18. El 19 de diciembre de 2021, la Srta. Glendaly Hernández le comunicó al señor Arrieta que deseaba poder visitar la propiedad para tomar unas medidas. Además, le informó que "la semana pasada [que es la semana del 14 de diciembre] se originó el préstamo".

19. El 22 de diciembre de 2021, la Srta. Glendaly Hernández le comunicó por mensaje de texto al codemandado, Arrieta, lo siguiente: "Saludos Arrieta, le llamaba para dejarle saber que voy a pasar a tomar unas medidas al *townhouse*". El codemandado, Arrieta, no le dijo que su contrato se había cancelado, sino que le contestó: "Creo que la llave no está ahí".

20. El Sr. Arrieta le opcionó la propiedad a la Sra. Curet Miranda durante el mismo periodo en que la Srta. Glendaly Hernández le está dando seguimiento al trámite de la propiedad, por ella opcionada.

21. Antes de concluir el contrato de opción con la Srta. Glendaly Hernández, los demandados no hicieron ningún tipo de gestión para darle seguimiento a la información del préstamo que el señor Arrieta entendía que no había recibido de parte de la demandante. Expresó bajo juramento el señor Arrieta que: "yo no tengo que hacer ninguna gestión pa' eso".

22. Ni el señor Arrieta, ni Arrieta Realty dieron seguimiento a la Srta. Glendaly Hernández para efectos del cumplimiento con la Cláusula 17, ni notificaron la resolución del contrato. El señor Arrieta decidió dar por cancelado el contrato automáticamente.

23. La Lcda. Torres Sánchez vendió el inmueble a la Sra. Curet Miranda, el 29 de diciembre de 2021, dentro del término de vigencia del Contrato.

24. El 5 de enero de 2022, antes del vencimiento de la opción, mientras la demandante se encontraba entusiasmada por la compraventa de su residencia y en gestiones para completar la misma, el señor Arrieta le informó que "la Lcda. Torres Sánchez ya no quería venderle la propiedad porque prefería alquilarla" y "que se olvidara de la casa".

25. El 11 de enero de 2022, fue cuando finalmente la demandante supo que la propiedad había sido vendida, el 29 de diciembre de 2021, a la Sra. Curet Miranda.

26. En el contrato de opción firmado entre la Srta. Glendaly Hernández y la Lcda. Torres Sánchez, las partes acordaron cooperar y realizar las gestiones pertinentes, para que el cierre de esta compraventa se pudiera llevar a cabo dentro de cuarenta y cinco (45) días calendarios, antes del 28 de enero de 2022.

27. El contrato de opción firmado entre la Srta. Glendaly Hernández y la Lcda. Torres Sánchez también establecía que la parte Vendedora y el corredor de bienes raíces tendrían derecho a retener el depósito de opción de $7,000.00, si:

    a. el préstamo fuera denegado a la compradora;

    b. si la Srta. Glendaly Hernández incumplía con los requisitos establecidos por la entidad financiera por falta de diligencia; o

    c. si rehusaba formalizar el contrato, según sus términos.

28. El 21 de enero del 2022, el Sr. Antonio Arrieta generó el cheque mediante el cual le devolvió a la Srta. Glendaly Hernández su depósito de opción, por el total de $7,000.

29. Al momento de determinar dejar sin efecto el contrato y venderle a otra persona la propiedad, ese asunto lo decidía el señor Arrieta junto a la Lcda. Torres Sánchez. O sea, que tanto el señor Arrieta como la Lcda. Torres Sánchez tomaron la decisión de resolver el contrato.

30. Para diciembre de 2021, cuando surgen los hechos objeto de esta demanda, el dueño de Arrieta Realty era el codemandado, Antonio Arrieta. No obstante, posterior a los hechos, él traspasó la propiedad a su hijo, el Dr. Antonio Arrieta Alicea.

En su dictamen, el foro *a quo* concluyó lo siguiente:

Luego de estudiar los hechos del caso y evaluar las mociones presentadas, este Tribunal reconsidera su posición, declarando **HA LUGAR** la solicitud de desestimación, presentada por la parte demandada, Ángeles Torres Sánchez, Antonio Arrieta Sepúlveda y Arrieta Realty. En consecuencia, se desestima la demanda presentada y se ordena el archivo del caso.

Inconforme con lo resuelto, la parte apelante acudió ante este foro mediante *Apelación,* en la cual esgrimió los siguientes señalamientos de error:

1. Erró el Honorable Tribunal de Instancia al resolver que el contrato entre las partes se había resuelto con la devolución del depósito.

2. Erró el Honorable Tribunal de Instancia al aplicar la doctrina de pago en finiquito a pesar de que no se cumplen con los requisitos.

El 8 de octubre de 2024, la parte apelada compareció mediante *Moción en Oposición a Solicitud de Apelación y en Cumplimiento de Orden.* Con el beneficio de la comparecencia de las partes procedemos a resolver.

## II

### A. Moción de Desestimación

La Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, faculta a la parte contra la cual se presente una alegación en su contra a presentar una moción de desestimación, por los fundamentos siguientes: 1) falta de jurisdicción sobre la materia; 2) falta de jurisdicción sobre la persona; 3) insuficiencia del emplazamiento; 4) insuficiencia del diligenciamiento del

emplazamiento; 5) dejar de exponer una reclamación que justifique la concesión de un remedio, y 6) dejar de acumular una parte indispensable. *Costas Elena y Otros v. Magic Sport y Otros*, 2024 TSPR 13, 213 DPR ___ (2024); *Cobra Acquisitions, LLC v. Mun. de Yabucoa et al*, 210 DRP 384 (2022); *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1049 (2013). La precitada regla permite a la parte demandada presentar una moción de desestimación debidamente fundamentada previo a contestar la demanda instada en su contra. *Conde Cruz v. Resto Rodríguez et al.*, 205 DPR 1043 (2020); *Casillas Carrasquillo v. ELA*, 209 DPR 240 (2022).

Asimismo, el Tribunal Supremo de Puerto Rico ha establecido que, al momento de considerar una moción de desestimación, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorable a la parte demandante. *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, supra, pág. 396; *Carrasquillo v. ELA*, supra, pág. 247; *Rivera Sanfeliz v. Jta. Dir. FirstBank*, supra, pág. 49; *Cruz Pérez v. Roldán Rodríguez et al.*, 206 DPR 261, 267 (2021); *Colón Rivera et al. v. ELA*, supra, pág. 1049. Es por lo que, para que proceda una moción de desestimación, "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de [D]erecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor". *Cobra Acquisitions, LLC v. Municipio de Yabucoa*, supra, pág. 396; *Carrasquillo v. ELA*, supra, pág. 247; *Cruz Pérez v. Roldán Rodríguez*, supra, págs. 267-268; *Rivera Sanfeliz v. Jta. Dir. FirstBank*, supra, pág. 49; *Ortiz Matías et al. v. Mora Development*, 187 DPR 649, 654 (2013*); López García v. López García*, 200 DPR 50, 69-70 (2018).

### *B. Sentencia Sumaria*

La sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin que se requiera llegar a la etapa de juicio.[3] *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964 (2022); *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023); *Birriel Colón v. Econo y Otros*, 2023 TSPR 120, 213 DPR ___ (2023) *Delgado Adorno v. Foot Locker Retail*, 208 DPR 622 (2022). La sentencia sumaria está regida por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta norma procesal. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015).

Ante la ausencia de una controversia sustancial y real sobre hechos materiales, sólo resta aplicar el derecho pertinente a la controversia. *Serrano Picón v. Multinational Life Ins.*, supra, pág. 992. Cuando se habla de hechos materiales, nos referimos a aquellos que pueden determinar el resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales.[4] *Alicea Pérez v. Coop. Seg. Múlt. et al.*, 210 DPR 71 (2022). Procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible, se acredita la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si procede en derecho. *SLG*

---

[3] *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310 (2021); *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 808 (2020).

[4] *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 662-663 (2017); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13; *Roldán Flores v. M. Cuebas, Inc.*, 199 DPR 664, 676 (2018).

*Fernández-Bernal v. RAD-MAN*, supra, pág. 13. De la prueba adjunta a la solicitud de sentencia sumaria, deberá surgir preponderadamente la inexistencia de controversia sobre los hechos medulares del caso. *Birriel Colón v. Econo y Otros*, supra.

Cónsono con esto, en el pasado el Tribunal Supremo de Puerto Rico ha afirmado que -utilizado ponderadamente- el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios de los tribunales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo. Véase *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615 (2009); *Padín v. Rossi*, 100 DPR 259 (1971); *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14.

Cumplidos estos requisitos, el Tribunal Supremo de Puerto Rico expresó además en *Pérez Vargas v. Office Depot*, supra, pág. 699, que el inciso (e) de la Regla 36.3 establece lo siguiente:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente. El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito. Si la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal. 32 LPRA Ap. V, R. 36.3 (e).

La sentencia sumaria no procederá en las instancias que: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho, no proceda. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14; *Serrano Picón v. Multinational Life Ins.*, supra, pág. 992.

En armonía con la normativa reseñada, nuestra Máxima Curia ha expresado que, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones *Birriel Colón v. Econo y Otros*, supra; *Ramos Pérez v. Univisión*, supra, págs. 215-216. Las meras afirmaciones no bastan. *Íd.* "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente". *Íd.* pág. 215. (Cita omitida). *Roldán Flores v. M. Cuebas, Inc.,* supra, pág.

677. Además, se le exige a la parte que se oponga ciertas exigencias adicionales. Primeramente, deberá presentar una relación concisa y organizada de los hechos esenciales y pertinentes que, a su juicio, estén en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 15. También, deberá enumerar los hechos que no estén en controversia, con indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible donde se establezcan estos. *Íd.* En adición, deberá esbozar las razones por las cuales no se debe dictar sentencia sumaria, argumentando el derecho aplicable. *Íd.*

Si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra*, se podrán considerar como admitidos y se dictará la Sentencia Sumaria en su contra, si procede. *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677.

Respecto a la revisión de las sentencias sumarias, el foro apelativo deberá utilizar los mismos criterios que el Tribunal de Primera Instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *González Meléndez v. Mun. San Juan*, supra. Nuestro Máximo Foro ha sido claro en que, [l]os tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Birriel Colón v. Econo y Otros*, supra. De acuerdo a lo anterior, el foro apelativo está obligado a examinar *de novo* la totalidad de los documentos incluidos en el expediente de la forma más favorable al promovido. *Íd.* *Serrano Picón v. Multinational Life Ins.*, supra, pág. 993; *Meléndez González et al. v. M. Cuebas*, supra, pág. 116.

### C. Los Contratos en General

Según es sabido, las obligaciones nacen de la ley, los contratos, los cuasicontratos, los actos ilícitos, de los actos u omisiones en las que interviene culpa o negligencia, y de cualquier otro acto idóneo para producirlas, conforme el ordenamiento jurídico. Art. 1063 del Código Civil de Puerto Rico, 31 LPRA sec. 8984; *Universal Ins. v. Popular Auto*, 207 DPR 228, 238 (2021); *NHIC et al. v. García Passalacqua et al.*, 206 DPR 105 (2021). Nuestro Código Civil define el contrato como aquel "negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma provista por ley, para crear, regular modificar o extinguir obligaciones". Art. 1230 del Código Civil de Puerto Rico, 31 LPRA sec. 9751; *Amador v. Conc. Igl. Univ. de Jesucristo*, 150 DPR 571, 581 (2000). El contrato se perfecciona desde que las partes manifiestan su consentimiento sobre el objeto y la causa, es decir, cuando median el objeto, consentimiento y causa. Art. 1237 del Código Civil de Puerto Rico, 31 LPRA sec. 9771; *Pérez Rodríguez v. López Rodríguez et at.*, 210 DPR 163, 186 (2022). No obstante, lo anterior no aplica en los casos en que sea requerido el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva. Art. 1237 del Código Civil de Puerto Rico, 31 LPRA sec. 9771. En nuestro ordenamiento jurídico se ha reconocido el principio de libertad de contratación, este faculta a las partes a contratar o no hacerlo con determinada persona, así como pactar los términos y condiciones que tengan por conveniente. Art. 1232 del Código Civil de Puerto Rico, 31 LPRA sec. 9753; *Pérez Rodríguez v. López Rodríguez et at.*, supra, pág. 187; *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 7-8 (2015); *Arthur Young & Co. v. Vega III*, 136 DPR 157 (1994). Sin embargo, tal libertad no es infinita, puesto que, las partes podrán acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público. Art. 1232 del Código

Civil de Puerto Rico, 31 LPRA sec. 9753; *Burgos López et al. v. Condado Plaza,* supra, págs. 7-8; *Oriental Bank v. Perapi et al.*, 192 DPR 7, 15 (2014). Una vez se perfecciona el contrato, lo acordado en este tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley. Art. 1233 del Código Civil de Puerto Rico, 31 LPRA sec. 9754. Finalmente, los tribunales estamos facultados para velar por el cumplimiento de los contratos, y no debemos relevar a una parte del cumplimiento de su obligación contractual cuando tal contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. UCPR*, 143 DPR 627 (1997).

### D. El Contrato de Opción de Compra

Nuestro Código Civil de 2020, en su Artículo 1029[5], define el contrato de opción de compra de la siguiente manera:

> La opción de compra es el derecho que faculta a su titular para que decida durante un plazo determinado, mediante la manifestación de su aceptación, el perfeccionamiento del contrato de compraventa que ha sido ya acordado en todos sus aspectos fundamentales y secundarios y a cuyo cumplimiento se mantiene comprometido el concedente durante el plazo prefijado.

El contrato o pacto de opción de compraventa se trata de un contrato que ha sido definido por la jurisprudencia como, "[...] un contrato consensual, mediante el cual una parte (promitente) le concede a otra (optante) el derecho exclusivo a decidir de manera unilateral si comprará determinado bien inmueble que le pertenece al promitente. Esta facultad tendrá que ejercitarse dentro de un periodo de tiempo definido por las partes, y tanto el promitente como el optante se beneficiarán del negocio". *SLG Irizarry v. SLG García,* 155 DPR 713, 722 (2001). Esencialmente, el contrato de opción de compra es un contrato preparatorio dirigido al eventual otorgamiento de un contrato de compra y venta. El mismo se distingue por los siguientes elementos esenciales: (1) se concede al

---

[5] 31 LPRA sec. 8821.

optante la facultad de decidir unilateralmente si celebrará el contrato principal (de compraventa) sin obligación por parte de éste; (2) dicha concesión tiene carácter de exclusividad; (3) se establece un plazo para ejercitar la opción, y (4) no existe otra condición que no sea la voluntad del optante.[6] No obstante, a pesar de que el contrato de opción se trata de un contrato consensual, la opción de compra es un contrato unilateral, debido a que el optante no está obligado a comprar, contrario al caso del promitente que sí está obligado a venderle al primero, si aquel lo decide.[7]

Ahora bien, sobre la posibilidad de obligarle a transferir su propiedad a otro particular sólo puede hablarse cuando ha habido acuerdo sobre la cosa y el precio. Por otro lado, cuando lo único que se ha acordado es la venta, sin más, ni siquiera el juicio imparcial de un juez respecto al valor en el mercado del bien en controversia puede sustituir la prerrogativa dominical de fijar el precio y establecer los términos de la enajenación, prerrogativa que, en este sistema, solo le compete al dueño.[8] Cabe señalar que:

> En la opción se da un proceso negocial en donde el consentimiento hacia la obligación surge, como en todo contrato, en virtud del intercambio de manifestaciones recepticias. La voluntad se forja a base de un proceso de negociación. No se trata de manifestación unilateral de voluntad, porque las obligaciones que surgen del pacto de opción son el resultado de un proceso de negociación entre el concedente y el optante, proceso que no se da en las obligaciones cuya fuente es la mencionada manifestación unilateral de voluntad.[9]

El contrato de opción de compra tiene que definir la oferta que habrá de mantenerse vigente con todos los elementos de una oferta final y completa del contrato de compraventa. Dicho de otro modo, para que estemos ante un verdadero pacto de opción, no pueden quedar por negociar términos o condiciones del contrato de

---

[6] *Íd.* a la pág. 722.
[7] *Íd.*
[8] Michel J. Godreau, *La opción de compra en Puerto Rico,* 53 Rev. Jur. UPR 569 (1984) a la pág. 569.
[9] *Íd.* a la pág. 578.

compraventa que sean de importancia para las partes.[10] Dentro de este marco, "[r]especto al precio de la finca, que es el que importa desde el punto del contenido de la oferta, tiene que tratarse de un precio en metálico, porque se trata de una oferta de venta, no de permuta. Además, aplican aquí los principios de las obligaciones respecto a los requisitos de la prestación, en particular, el de la determinabilidad de la misma. No será necesario que el precio de venta esté exactamente determinado, siempre y cuando su determinación final no requiera un nuevo proceso de negociación.[11]

Habidas cuentas, este tipo de contrato preparatorio produce una obligación de hacer y no de dar, ya que sólo tiene por objeto la realización futura de un contrato de compraventa. *Soto v. Rivera*, 144 DPR 500, 509-510 (1997); *Dennis, Metro Invs. v. City Fed. Sav.*, 121 DPR 197 (1988); *Jordán-Rojas v. Padró-González*, 103 DPR 813, 817 (1975). El contrato de promesa bilateral tiene la ventaja de lograr la vinculación inmediata de las partes cuando por alguna razón no puede otorgarse una compraventa completa y definitiva y que, mediante la vinculación inmediata, las partes logran la garantía o seguridad de que el contrato definitivo o completo se celebrará o concluirá más tarde. *Rossy v. Tribunal Superior*, 80 DPR 729, 742 (1958).

Por consiguiente, ante la negativa de una de las partes de cumplir con la promesa bilateral, cabe una acción para exigir su cumplimiento específico y no simplemente una acción para el resarcimiento de perjuicios, si la prestación básica no se refiere a hechos personalísimos o las líneas básicas sentadas en el precontrato no son insuficientes.[12] Así pues, si la cosa prometida en venta está todavía en el patrimonio del promitente, el acreedor en

---

[10] *Íd.* a la pág. 596.
[11] *Íd.* a la pág. 597.
[12] *Íd.* a la pág. 743. Véase también, *Jordán-Rojas v. Padró-González*, 103 DPR a la pág. 819.

un contrato de promesa bilateral de venta de un inmueble podría exigir su cumplimiento en forma específica: la celebración de la venta previamente convenida y el otorgamiento de la correspondiente escritura pública.[13]

### E. Transacción y pago en finiquito

El Tribunal Supremo evaluó en *Feliciano Aguayo v. Mapfre*, 207 DPR 138, 157-164 (2021) las figuras jurídicas de la transacción y el pago en finiquito. El Artículo 1709 del Código Civil de 1930 establecía que **"[l]a transacción es un contrato por el cual las partes, dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado".**[14]

Por su parte, el Código Civil actual, sustituye al citado artículo y establece que "[p]or el contrato de transacción, mediante concesiones recíprocas, las partes ponen fin a un litigio o a su incertidumbre sobre una relación jurídica". 31 LPRA sec. 10641 (2020).

Los elementos constitutivos de un contrato de transacción son los siguientes:

**(1) una relación jurídica incierta y litigiosa,**

**(2) la intención de los contratantes de componer el litigio y sustituir la relación dudosa por otra cierta e incontestable y**

**(3) las reciprocas concesiones de las partes.** (énfasis nuestro).[15]

La Alta Curia destacó que toda transacción parte de la premisa de que las partes tienen dudas sobre la validez o corrección jurídica de sus respectivas pretensiones y eligen resolver las diferencias mediante mutuas concesiones.[16]

---

[13] *Íd.*
[14] 31 LPRA sec. 4821 (derogado 2020).
[15] *Mun. San Juan v. Prof. Research*, 171 DPR 219, 239 (2007).
[16] *Íd.*

Como todo contrato, la transacción debe contar con consentimiento, objeto y causa. Con respecto a la **causa** en el contrato de transacción, se ha establecido que "[e]n conjunto, **el litigio y las recíprocas concesiones** constituyen los elementos de la causa".[17] En consecuencia, **"[e]s necesario que cada uno de los contratantes reduzca y sacrifique a favor de otro una parte de sus exigencias a cambio de recibir una parte de aquello objeto del litigio"**.[18]

En particular, el Art. 1503 del actual Código Civil en lo pertinente a la transacción, incluye el pago en finiquito, y establece lo siguiente:

> La transacción debe constar en un **escrito firmado por las partes** o en una resolución o una sentencia dictada por el tribunal. Si se refiere a derechos constituidos mediante escritura pública, se requiere esta formalidad. La inobservancia de estas reglas la hace nula.
>
> **El pago en finiquito tiene aquellos efectos que la ley establece.**[19]

Los contratos de transacción comprenden los objetos expresados determinadamente en ellos, o los que, por inducción necesaria de sus palabras, deban reputarse comprendidos en él.[20] Así, "[l]a renuncia general de derechos se entiende sólo de los que tienen relación con la disputa sobre que ha recaído la transacción".[21]

Por otro lado, el Art. 1504[22] del vigente Código Civil 2020, establece las siguientes circunstancias en las que una transacción será invalida:

> (a)   La situación que la genera no se corresponde con los hechos reales y el litigio o la incertidumbre no hubieran aparecido de haberse conocido la situación real;

---

[17] *Íd.*
[18] *Íd.*
[19] 31 LPRA sec. 10647 (énfasis suplido).
[20] 31 LPRA sec. 4826 (derogado 2020). Por su parte, el Art. 1499 del actual Código Civil establece que "[e]l contrato de transacción se interpreta restrictivamente". 31 LPRA sec. 10643 (2020).
[21] *Íd.*
[22] 31 LPRA sec. 10648.

(b)    incluye títulos total o parcialmente inexistentes;

(c)    incluye títulos sobre los cuales se ignora que existe otro mejor;

(d)    incluye aspectos sobre los cuales se ignora que ya están resueltos mediante sentencia firme; o

(e)    la efectividad de una prestación es insegura.

Este artículo advierte que no cualquier incertidumbre da lugar a la transacción, sino que debe tratarse de una transacción que ponga fin a las discusiones e incertidumbres que experimentan las partes. Además, esa incertidumbre debe tener como objeto una duda verdaderamente racional.[23]

En particular, **el pago en finiquito ("*accord and satisfaction*")** es una forma de extinguir las obligaciones.[24] Fue en *López v. South PR Sugar Co.*, 62 DPR 238 (1943), que el Tribunal Supremo atendió una controversia contractual a la luz del pago en finiquito[25]. En específico, allí se dijo que para que operara la figura se exigía el concurso de los requisitos siguientes: **(1) Una reclamación ilíquida o sobre la cual exista controversia *bona fide*; (2) un ofrecimiento de pago por el deudor; y (3) una aceptación del ofrecimiento de pago por el acreedor**. (Énfasis nuestro).

Tiempo después, la más Alta Curia modificó el primer requisito y estableció que -para que se configure la figura o aplique el pago en finiquito- también será requisito **"la ausencia de opresión o indebida ventaja de parte del deudor sobre su acreedor"**.[26] Puntualizó la importancia de evaluar con detenimiento

---

[23] M.R. Garay Aubán, *Código Civil 2020 y su historial legislativo*, 1ra ed. urgente, San Juan Eds. SITUM, 2020, pág. 1047.

[24] *Feliciano Aguayo v. MAPFRE*, supra, a la pág. 159, citando a *A. Martínez & Co. v. Long Const. Co.*, 101 DPR 830, 834 (1973). Esta figura se incorporó a nuestro ordenamiento jurídico mediante jurisprudencia, en *City of San Juan v. St. John's Gas Co.* que el Tribunal Supremo de Estados Unidos resolvió que la figura de pago en finiquito regía en Puerto Rico.

[25] En el caso la figura fue validada pero no prosperó, puesto que no se cumplieron los requisitos. *López v. South PR Sugar Co.*, supra, págs. 245-246.

[26] *A. Martínez & Co.,* supra, pág. 835; *HR Elec., Inc. v. Rodríguez*, 114 DPR 236, 241 (1983).

el factor de la ausencia de opresión de la deudora sobre su acreedora cuando se invoca la doctrina de pago en finiquito.[27] Más importante aún, el Tribunal Supremo fue enfático al establecer que la figura **prevalecerá solamente en circunstancias en las que no exista opresión o indebida ventaja de parte del deudor y en las cuales medien circunstancias claramente indicativas de que el deudor pretende extinguir su obligación**. *Id.* Es decir, tiene que existir un claro entendimiento por parte de quien acepta que el pago representa un pago total, en saldo y final de la obligación.[28]

Al describir la figura, el Máximo Foro pronunció que el pago en finiquito es paralelo al contrato de transacción. En específico, expresó que "[e]l contrato de acuerdo y pago (*accord and satisfaction*), al igual que su paralelo de mayor solemnidad la transacción, es accesorio, consensual, bilateral y oneroso".[29]

También, señaló que la figura del pago en finiquito "en cierto modo opera en un área de contratación rápida propia de nuestros días y es más asequible para la terminación en corto plazo de diferencias, incertidumbres y mutuas reclamaciones que el contrato de transacción definido en el Art. 1709 del Código Civil,[30] el cual generalmente nace de un pleito pendiente o a punto de comenzar".[31]

Al determinar si la figura del pago en finiquito se concreta o no, el Tribunal Supremo ha sido muy riguroso en la evaluación del concurso de todos sus requisitos. En el caso de *Feliciano Aguayo v. Mapfre Panamerican Insurance Company*, supra, a la pág. 161, nuestra más Alta Curia **recalcó que la doctrina no ha prevalecido como fuente de extinción de una obligación en prácticamente**

---

[27] *A. Martínez & Co.,* supra, a la pág. 833.
[28] *Íd.*
[29] *Íd.*
[30] 31 LPRA sec. 4821.
[31] El Art. 1709 del derogado Código Civil de 1930, encuentra su equivalencia en el Art. 1497 del Código Civil de 2020, 31 LPRA sec. 10641, que dispone: Por el contrato de transacción, mediante concesiones recíprocas, las partes ponen fin a un litigio o a su incertidumbre sobre una relación jurídica.

**ninguno de los casos en los que ha tenido la oportunidad de evaluar la invocación de la defensa**. Sobre el primer requisito, entiéndase, la existencia de una reclamación ilíquida o sobre la cual exista controversia *bona fide*, en los casos de *López v. South PR Sugar Co., y Pagán Fortis v. Garriga*,[32] el Tribunal Supremo determinó que **en ausencia de este requisito no se concreta la figura de pago en finiquito**. Evaluados los argumentos en dicho caso el Máximo Foro expresó que -a pesar de que no había duda sobre el ofrecimiento ni de la aceptación del pago- no existía una reclamación ilíquida o una controversia *bona fide*.

De otra parte y con relación al segundo requisito, el Tribunal Supremo estableció que, "el ofrecimiento de pago tiene que ir **acompañado por declaraciones o actos que claramente indiquen que el pago ofrecido por el deudor al acreedor es en pago total, completo y definitivo de la deuda existente entre ambos...".**[33] **A su vez, la doctrina requiere que el ofrecimiento sea de buena fe**.[34] En fin, el ofrecimiento del pago debe sujetarse a la condición de que de aceptarlo se entenderá en saldo de su reclamación.[35]

Sobre el tercer requisito, la Alta Curia ha resuelto que la aceptación del ofrecimiento se perfecciona cuando el acreedor retiene el cheque y consiente bajo la premisa de que el instrumento fue remitido en concepto de pago y saldo total de la obligación.[36] Sin embargo, para que la retención del cheque constituya una aceptación no puede haber opresión o indebida ventaja de parte del deudor.[37]

---

[32] *Pagán Fortis v. Garriga*, 88 DPR 279, 283-284 (1963).
[33] *HR Elec., Inc. v. Rodríguez*, supra, a la pág. 242.
[34] *López v. South Sugar,* supra, en la pág. 245; *H.R. Elec. v. Rodríguez,* supra, en la pág. 240.
[35] *HR Elec., Inc. v. Rodríguez,* supra. Véase, además, *Gilormini Merle v. Pujals Ayala*, 116 DPR 482, 484-485 (1985).
[36] *A. Martínez & Co.,* supra, en la pág. 834.
[37] *Íd.*

### F. Ley de Transacciones Comerciales

La *Ley de Transacciones Comerciales* codifica la jurisprudencia sobre el pago en finiquito antes citada con ciertas variantes a considerar.[38] En lo pertinente, la Sección 2-311 establece lo siguiente:

> (a) Si una persona contra quien se hace una reclamación prueba que: (i) **ofreció de buena fe** un instrumento al reclamante en pago total de la reclamación, (ii) el monto de la reclamación no había sido liquidado **o estaba sujeto a una controversia bona fide**, y (iii) el reclamante obtuvo el pago del instrumento, los siguientes incisos serán de aplicación.
>
> (b)    A menos que aplique el inciso (c) de esta sección, si la persona contra quien se establece la reclamación prueba que el instrumento o una comunicación escrita que le acompaña contiene una **declaración conspicua** a los efectos de que el instrumento fue ofrecido en pago total de la reclamación, la reclamación queda saldada.
>
> (c)    Sujeto a lo dispuesto en el inciso (d) de esta sección, una reclamación no queda saldada bajo las disposiciones del inciso (b) de esta sección en cualquiera de las siguientes situaciones:
>
>> [........]
>> (2) El reclamante, sea o no una organización, prueba que dentro de los noventa (90) días siguientes al pago del instrumento, ofreció el repago de la cantidad de dinero especificada en el instrumento a la persona contra quien se establece la reclamación. Este inciso no será de aplicación si el reclamante es una organización que envió una declaración en cumplimiento con lo dispuesto con la cláusula (1)(i) de este inciso.
>
> (d)    Se salda una reclamación si la persona contra quien se incoa prueba, que dentro de un tiempo razonable con anterioridad al inicio del procedimiento de cobro del instrumento, el reclamante o un agente de éste con responsabilidad directa respecto a la obligación en disputa, sabía que el instrumento fue ofrecido en saldo total de la reclamación.[39]

La citada disposición requiere como condición para que se configure el pago en finiquito la existencia de los siguientes requisitos: (**1) que el deudor ofrezca de buena fe el instrumento al reclamante en pago total de la reclamación, (2) la existencia**

---

[38] Ley de Transacciones Comerciales, Ley Núm. 208-1995, 19 LPRA secs. 401-2409.
[39] Ley Núm. 208-1995, 19 LPRA sec. 611 (énfasis suplido).

**de una reclamación ilíquida o una controversia *bona fide*, y (3) que el reclamante haya obtenido el pago del instrumento**. El estatuto impone el peso de la prueba a la persona contra la cual se hace el reclamo.

De entrada, estos requisitos son cónsonos con los establecidos jurisprudencialmente. No obstante, vemos que la *Ley de Transacciones Comerciales*, supra, **impone más restricciones para que se configure la figura de pago en finiquito**. Sobre el requisito del ofrecimiento del instrumento negociable en pago total de una reclamación, requiere que se haga de **buena fe.** La propia *Ley de Transacciones Comerciales*, supra, define "buena fe" como "la honestidad de hecho y **la observancia de las normas comerciales razonables de trato justo**".[40]

La mencionada Ley también requiere que la declaración de la oferta sea **conspicua** a los efectos de que el instrumento fue ofrecido en pago total de la reclamación. La propia Ley define el término "conspicuo" como sigue:

> Un término de una cláusula es conspicuo cuando está redactado de tal forma que una persona razonable, que será afectada por el mismo, deberá notarlo. Un **encabezamiento** escrito en letras mayúsculas (e.g **CARTA** DE PORTE NO NEGOCIABLE) es conspicuo. Un lenguaje en el **texto de un formulario es** 'conspicuo' si está escrito en **letras más grandes o en otro tipo de letra o color**. […].[41]

Esta legislación establece que "[l]a determinación de si un término o cláusula es 'conspicuo' o no, corresponderá a los tribunales".[42]

Por último, esta disposición permite el ofrecimiento del repago de la cantidad de dinero especificada en el cheque dentro de los noventa (90) días siguientes al pago del instrumento.[43] **Del propio texto de la Ley *de Transacciones Comerciales* queda claro que**

---

[40] *Íd.* sec. 503 (énfasis suplido).
[41] *Íd.* sec. 451 (énfasis suplido).
[42] *Íd.*
[43] 19 LPRA sec. 451 (énfasis suplido).

**el mero cambio del cheque no configura de forma automática la figura de pago en finiquito.**

El Tribunal Supremo concluyó que la aplicación de esta excepción o término de gracia para hacer el repago de la cantidad incluida en el cheque es un asunto que compete dirimir a los tribunales, al igual que el cumplimiento con la declaración conspicua por parte del asegurador. Nótese, que en el pasado el Tribunal Supremo ha denegado la procedencia de la sentencia sumaria para resolver la aplicación de la defensa de pago en finiquito cuando había controversia de hechos de si el demandado "aceptó, expresa o tácitamente, los cambios en el endoso [del cheque] efectuados en su presencia [por la parte demandante a los efectos de que solo era un pago parcial], asunto que debe ventilarse en juicio plenario").[44]

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

En sus dos señalamientos de error, la parte apelante nos plantea que, 1) erró el Tribunal de Instancia al resolver que el contrato entre las partes se había resuelto con la devolución del depósito y 2) al aplicar la doctrina de pago en finiquito a pesar de que no se cumplen con los requisitos. Por estar estrechamente relacionados ambos señalamientos, procederemos a discutirlos de manera conjunta.

Como cuestión de umbral, al ejercer nuestra función revisora respecto a una moción de sentencia sumaria debemos: 1) examinar de *novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; 2) revisar que tanto la moción de sentencia sumaria como

---

[44] *Gilormini Merle v. Pujals Ayala,* supra, 485.

su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; 3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil,[45] de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; 4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. *Roldán Flores v. M. Cuebas*, supra.

Al revisar ponderadamente la moción de sentencia sumaria instada por la parte apelada, colegimos que, en efecto, dicha parte cumplió con las disposiciones de la Regla 36.3 (a) de Procedimiento Civil, *supra*, al incluir: (i) una exposición breve de las alegaciones; (ii) la causa de acción, reclamación o parte respecto a la cual solicita la sentencia sumaria; (iii) una relación concisa, organizada y en párrafos enumerados de *treinta y dos (32) hechos esenciales y pertinentes sobre los cuales, a su juicio, no hay controversia sustancial,* con indicación de la prueba admisible en evidencia obrante en el expediente del tribunal donde se establecen estos hechos,[46] (iv) las razones por las cuales debe ser dictada la sentencia, apoyada con la correspondiente argumentación del derecho aplicable, y (v) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA,* supra, pág. 940; *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14.

La parte apelada por su parte, en su escrito en oposición a la moción de sentencia sumaria se circunscribió a reseñar las

---

[45] 32 LPRA Ap. V, R. 36.4.

[46] Como mencionamos previamente, a la moción de sentencia sumaria se anejaron los siguientes anejos: 1A) Transcripción de la deposición del señor Antonio Arrieta; 1B Transcripción de la deposición de la licenciada Torres Sánchez; 2) Copia impresa de mensajes de textos; 3) Declaración Jurada de la señora Glendaly Hernández Acosta; 4) Contrato de Compraventa; 5) Copia impresa del correo electrónico de 13 de diciembre de 2021; 6A) Cotización; 6B) Loan Estimate; 7) Cheque; 8) Copia impresa del correo electrónico de 11 de abril de 2023; 9) Anuncio de Clasificados Online; 10) Documentos del préstamo.

controversias que fueron consignadas por el foro primario en el dictamen apelado. En vista de ello, somos de la opinión que la parte apelada no cumplió cabalmente con lo dispuesto en la Regla 36.3 (b) de Procedimiento Civil[47]. Más aún, la parte apelada ni siquiera intentó rebatir las determinaciones de hechos consignadas por el foro primario.

Conforme a la normativa procesal atinente al caso que nos ocupa, la parte que desafía una solicitud de sentencia sumaria no puede descansar en las aseveraciones o negaciones consignadas en su alegación. Por el contrario, está obligada a enfrentar la moción de su adversario de forma tan detallada y específica como lo ha hecho el promovente en su solicitud puesto que, de incumplir, corre el riesgo de que se dicte sentencia sumaria en su contra, de proceder en derecho.[48] Consecuentemente, en vista de que la parte apelada no atacó las determinaciones de hecho realizadas por el foro primario, y luego de evaluar la evidencia documental que obra en autos, no habremos de intervenir con las mismas.

Ante este escenario, nos corresponde determinar si, en efecto, la doctrina de pago en finiquito es de aplicación al caso de marras. La respuesta es en la negativa. Veamos.

De las determinaciones de hechos esbozadas por el foro primario y según surge de la evidencia que se presentó con la moción de sentencia sumaria, no está en controversia que las partes suscribieron un contrato de opción de compraventa titulado Contrato de Compraventa con la licenciada Torres Sánchez como Parte Cedente. Mediante el aludido contrato, la licenciada Sánchez se obligó a venderle a la parte apelante una propiedad inmueble sita en The Village at Suchville #1 San Miguel, Guaynabo, Puerto Rico.

---

[47] 32 LPRA Ap. V, R. 36.3(b).
[48] Véanse: *Rodríguez García v. UCA*, supra; *Roldán Flores v. M. Cuebas*, supra; *Bobé et al. v. UBS Financial Services*, 198 DPR 6 (2017); *Meléndez González et al. v. M. Cuebas*, supra; *SLG Zapata-Rivera v. J.F. Montalvo*, supra.

En virtud del aludido contrato, la parte apelante entregó a la licenciada Torres Sánchez, por conducto del corredor de bienes raíces, el señor Antonio Arrieta Sepúlveda y/o Arrieta Realty, un depósito en la suma de siete mil dólares ($7,000).

A pesar de que aún estaba vigente el aludido contrato entre las partes, la parte apelada le vendió la propiedad en controversia a una tercera persona, privando así a la parte apelante de la oportunidad de adquirir el bien inmueble en cuestión.

La parte apelada sostiene que, habida cuenta de que le entregó a la parte apelante el depósito de los siete mil dólares ($7,000), consignados por esta en virtud del contrato, el recibo de dicha suma constituyó un pago en finiquito. No obstante, no podemos perder de perspectiva que, los referidos siete mil dólares ($7,000.00) fueron entregados inicialmente por la parte apelante como depósito, a tenor con lo acordado en el contrato de opción. De ninguna manera, dicha suma constituyó un pago por el cual se pusiera fin a la controversia mediante un acuerdo de transaccional. Por el contrario, la parte apelante hizo claro que, recibía dicho cheque sin que ello constituyera una renuncia a su reclamación por el incumplimiento de la parte apelada con el contrato de opción.

El Art. 1497 del Código Civil de 2020 establece que "[p]or el contrato de transacción, mediante concesiones recíprocas, las partes ponen fin a un litigio o a su incertidumbre sobre una relación jurídica".[49]

Los elementos constitutivos de un contrato de transacción son los siguientes:

> **(1)  una relación jurídica incierta y litigiosa,**
>
> **(2)  la intención de los contratantes de componer el litigio y sustituir la relación dudosa por otra cierta e incontestable y**

---

[49] 31 LPRA sec. 10641.

**(3)   las recíprocas concesiones de las partes.** (énfasis nuestro).[50]

La Alta Curia destacó que toda transacción parte de la premisa de que las partes tienen dudas sobre la validez o corrección jurídica de sus respectivas pretensiones y eligen resolver las diferencias mediante mutuas concesiones.[51]

Como todo contrato, la transacción debe contar con consentimiento, objeto y causa. Con respecto a la **causa** en el contrato de transacción, se ha establecido que "[e]n conjunto, **el litigio y las recíprocas concesiones** constituyen los elementos de la causa".[52] En consecuencia, **"[e]s necesario que cada uno de los contratantes reduzca y sacrifique a favor de otro una parte de sus exigencias a cambio de recibir una parte de aquello objeto del litigio".**[53]

En particular, el Art. 1503 del actual Código Civil en la transacción, incluye el pago en finiquito, y establece lo siguiente:

> La transacción debe constar en un **escrito firmado por las partes** o en una resolución o una sentencia dictada por el tribunal. Si se refiere a derechos constituidos mediante escritura pública, se requiere esta formalidad. La inobservancia de estas reglas la hace nula.
>
> **El pago en finiquito tiene aquellos efectos que la ley establece.**[54]

En el caso de marras no están presente los criterios y requisitos establecidos tanto por nuestro Código Civil como por la jurisprudencia interpretativa para concluir que hubo un acuerdo transaccional y que medió un pago en finiquito.  En vista de lo anterior, incidió el foro primario al así determinarlo, por lo que procede la revocación del dictamen apelado.

---

[50] *Mun. San Juan v. Prof. Research*, supra, pág. 239.
[51] *Íd.*
[52] *Íd.*
[53] *Íd.*
[54] 31 LPRA sec. 10647 (énfasis suplido). Adviértase que este artículo no tiene precedente en el derogado Código Civil, por lo que se incluye para informar sobre cómo el Legislador consideró la figura.

**IV**

Por los fundamentos antes expuestos, se *revoca* la *Sentencia* apelada y se devuelve el caso al foro primario para la continuación de los procedimientos de conformidad con lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


                        Lcda. Lilia M. Oquendo Solís
                    Secretaria del Tribunal de Apelaciones